COAL OPERATORS CASUALTY CO. *v.* F. S. NEELY CO.

4-9593                    243 S. W. 2d 744

Opinion delivered November 19, 1951.

580

*Harper, Harper & Young,* for appellant.

*L. C. Bryan* and *Warner & Warner,* for appellee.

ROBINSON, J. The issue involved in this appeal is whether a policy of workmen's compensation insurance written to apply only to the State of Oklahoma should be reformed to apply to both Arkansas and Oklahoma.

The appellee, F. S. Neely Company, hereinafter referred to as Neely, is engaged in the coal mining business in Arkansas and Oklahoma. Pierce, Porter & Martin, hereinafter referred to as Pierce, are insurance agents and have been so engaged for many years in Tulsa, Oklahoma. In 1944, at the solicitation of Pierce, Neely purchased a workmen's compensation insurance policy which was carried for two years. Again, in 1947, Neely placed the insurance with Pierce and that firm had the policy written by appellant. The policy issued covered appellee Neely in both the States of Arkansas and Oklahoma for the year 1947. In 1948 the policy was renewed, again covering both States. In 1949 Neely authorized a renewal of the policy for that year. But, as written, the policy issued in 1949 applied only to the State of Oklahoma. In January, 1950, while the policy issued in 1949 was in full force and effect, one of Neely's employees was seriously injured in Arkansas. The Insurance Company denied liability on the ground that the policy did not protect the assured Neely in Arkansas. Neely filed suit for reformation of the policy claiming it was a mutual mistake that the policy was written to cover only Oklahoma, and that it was the intention of the parties at the time of the issuance of the policy that it should apply to both Oklahoma and Arkansas. After hearing the evidence the Chancellor found that there had been a mutual mistake and the policy should be reformed to cover both States. From a decree to that effect comes this appeal.

The evidence shows conclusively that it was Neely's intention the policy be renewed as originally written covering both Arkansas and Oklahoma, and it is proven beyond any doubt that it was the intention of Pierce that the policy be issued to cover both States. Mr. Morley of Pierce, Porter & Martin, testified:

"Q. The question was, Mr. Morley, what was your intention and understanding as to what the policy should cover?

"A. It was my intention that it would cover Mr. Neely's operations in Oklahoma and Arkansas."

On February 1, 1949, Mr. Morley wrote Neely as follows:

"I thought it would be well to advise that there is a little delay in getting the renewal workmen's compensation and public liability policies to you covering your operations in the States of Oklahoma and Arkansas. The policies, however, are being prepared and they will be sent to you just as soon as they are completed."

W. Van Stuck & Company of Oklahoma City are general agents for appellant in the State of Oklahoma. The policy in question was issued out of Van Stuck's office. Van Stuck had inquired of Pierce as to the location of Neely's operations, and in turn Pierce requested this information from Neely, who wrote to them as follows: "We have been and are at present only operating near Bokoshe, Oklahoma. We will advise of any change of location of any of our operating points." The Insurance Company says that it was upon this information that the policy was issued covering only the State of Oklahoma, that it did not intend to cover the State of Arkansas, and that there was no mistake.

Neely renewed operations in Arkansas in December, 1949, and sent in to Pierce the premium covering operations in this State. Upon an audit of its books, Pierce discovered that the policy had not been issued to cover Arkansas, and had Van Stuck attach a rider to the policy covering this State from December 1st. At the time of the request for the rider, the employee had been injured.

However, neither Pierce nor Van Stuck was aware of that fact, and the rider was not actually attached until subsequent to the expiration date of the policy. Neely did not know the policy had not been written so as to cover Arkansas until the claim for the injury had been denied.

The first question that presents itself is—was Pierce, who procured the application on which the policy was issued, a broker and acting as agent for Neely in purchasing the insurance, or was Pierce the local agent of the insurance company? The Statutes answer the question. Pierce was the agent of the appellant Insurance Company. Section 66-302, Ark. Stats., provides:

"Any person, who shall hereafter solicit insurance or procure applications, shall be held to be soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding."

Title 36, § 197, Okla. Stats., provides: "Any person who shall solicit or procure an application for insurance shall, in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

Both the Arkansas and Oklahoma Statutes are to the same effect; hence it makes no difference which governs. Accordingly, Pierce was the agent of the appellant Insurance Company. The general rule in respect to the effect of statutes of this character is stated in 29 Am. Jur. 112, as follows:

"In some jurisdictions, statutes have been enacted providing that any person performing certain specific acts in reference to insurance, such as soliciting or taking applications for insurance, shall be regarded as the agent of the insurance company, and not of the insured. Such statutes do not violate the provision of the Federal Con-

stitution prohibiting the denial by one state of full faith and credit to the laws of another state, nor do they violate the privileges and immunities, due process, or equal protection clauses of the Fourteenth Amendment to the Federal Constitution. The term 'solicit' in a statute providing that any person who shall solicit an application for insurance shall be regarded as the agent of the corporation issuing the policy includes broadly any person who holds himself out as an insurance agent, and thus invites and receives insurance business, collecting and transmitting premiums, and delivering policies and receipts.''

It being established that Pierce was the agent of the appellant Insurance Company and, as such, dealt with Neely with reference to the issuance of the policy, and it being the intention of both Pierce and Neely, as shown by a preponderance of the evidence, that the policy should cover both Arkansas and Oklahoma, it cannot be said that it was not the intention of the appellant Insurance Company that the policy cover both States. It is true that when the Insurance Company inquired of Neely as to the location of his present operation he was only operating at Bokoshe, Oklahoma. But, it is also true that from time to time he operated in both States and he had authorized the renewal of the policy covering both States. Furthermore, the Insurance Company, through its agent, Pierce, had written to him that his policy was being ''renewed covering your operations in the States of Oklahoma and Arkansas.'' Pierce procured the application and the policy was issued on such application. A great preponderance of the evidence shows that Neely thought he was getting a policy covering his operations in both Arkansas and Oklahoma. The appellant Insurance Company, through its agent Pierce, also intended that such a policy be issued. Neely paid and Pierce received the premium covering both States just as soon as it became due.

Even if the Insurance Company, through its agent, had not written to the effect that the 1949 policy was being renewed covering both States, Neely had authorized the renewal of the policy then in existence. The Insur-

ance Company, other than by the terms of the new policy itself, gave Neely no notice that the new policy did nòt cover Arkansas as did the old policy.

In the case of *Aetna Insurance Company* v. *Short*, 124 Ark. 505, 187 S. W. 657, it is said: "A renewal of a policy is, unless otherwise expressed, on the same terms and conditions as were contained in the original policy."

In 29 Am. Jur. 244, the rule is stated as follows: "Upon like principle, where an insured applies for a renewal of a fire insurance policy and it is expressly or impliedly understood that the renewal shall be upon the same terms as the earlier policy, it is held that the insured may rely upon receiving such a policy, and is not precluded from asking for a reformation because of a variance, although he did not examine the policy delivered and discovered the discrepancy."

In *Crowell* v. *New Hampshire Ins. Co.*, 147 So. 762, it is held: "When the insurance agency issued the contract on June 17, 1930, it was legally bound to issue a policy containing the same terms and conditions as the original policy. By the renewal or extension, unless there is a special agreement for different terms, the original policy is continued under the original stipulations, and the only change is in the time of its expiration. Under such circumstances, if there is a change in the condition or terms of the policy, it is the duty of the insurer to call attention to the change, otherwise the change can be no part of the contract, and the renewal contract is subject to reformation by the courts of equity to make it conform to the original contract, unless there has been an amendment of the contract by enactment of a statute by the legislature."

In the case of *American Alliance Ins. Co.* v. *Paul*, 173 Ark. 960, 294 S. W. 58, this Court said: "In the case of *Welch* v. *Welch*, 132 Ark. 227, 200 S. W. 139, this court went thoroughly into the question of reformation of written instruments, and there held that a court of equity will reform written instruments either where there is a mutual mistake or where there has been a mistake of one party accompanied by fraud or inequitable conduct of

the other party, and quoted Pomeroy, Eq. Jur. (3 Ed.), vol. 4, par. 1376, as follows:

" 'Equity has jurisdiction to reform written instruments in but two well defined cases: (1) Where there is a mutual mistake—that is, where there has been a meeting of minds—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties. The conditions of fact giving rise to the exercise of the jurisdiction to grant reformation are numerous. Almost all written instruments may be reformed when a proper occasion is furnished.' "

The evidence sustains the Chancellor's finding that the policy should be reformed.

The Chancery Court allowed the appellee's attorneys a fee of $500. Appellant contends that no fee should have been allowed saying that the Statute authorizing the assessment of attorney's fee and penalty does not apply to the situation here presented. Appellee seeks additional attorney's fee covering the appeal to this Court. Section 66-514, Ark. Stats., providing for the assessment of attorney's fee and penalty, specifically includes "casualty" insurance. In the case of *Liverpool & London & Globe Ins. Co., Ltd.*, v. *Jones*, 207 Ark. 237, 180 S. W. 2d 519, it was held that the legislation providing for attorney's fee and penalty must be construed in connection with Act 493 of 1921, now § 66-201 Ark. Stats. Subdivision 5 thereof expressly mentions workmen's compensation insurance. Hence, the allowance of attorney's fee was proper.

The majority of the court is of the opinion that the $500 fee allowed by the Chancellor is sufficient in this instance to cover the entire case.

Affirmed.