# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### August 31, 2011 Session

## ALLSTATE INSURANCE COMPANY v. DIANA LYNN TARRANT ET AL.

**Rule 11 Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Sevier County
No. 0810463     Telford Forgety, Chancellor**

_____

**No. E2009-02431-SC-R11-CV - Filed March 26, 2012**

_____

After an automobile accident between the insured's van and a motorcycle, the insurer filed a declaratory judgment action to determine whether the van was covered under a commercial policy with a liability limit of $500,000 or a personal policy with liability limits of $100,000 per person and $300,000 per accident.  The insurer alleged that before the accident the insured had instructed his insurance agent to transfer the van from the commercial policy to the personal policy.  The insured denied this and alleged that he had instructed the agent to retain the van on the commercial policy.  The trial court ruled that because the insurer had sent the insured a letter and premium bills showing the change in coverage and the insured had paid the bills without objection, he had ratified the transfer and the van was covered under the personal policy. The Court of Appeals reversed. We hold that the action of the insurance agent in transferring the van to the personal policy was not subject to ratification by the insured because the insurance agent was not acting in the insured's stead or for his benefit when it made the transfer. We further hold that the insurer is estopped from denying coverage under the commercial policy.  We affirm the judgment of the Court of Appeals, although on different grounds.

**Tenn. R. App. P. Rule 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**; **Cause Remanded**

SHARON G. LEE., J, delivered the opinion of the Court, in which JANICE M. HOLDER AND GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a dissenting opinion, in which CORNELIA A. CLARK, C.J., joined.

David Lyle Franklin, Chattanooga, Tennessee, for the appellant, Allstate Insurance Company.

Charles S. Sexton, Sevierville, Tennessee, for the appellees, John Tarrant, Diana Lynn Tarrant, and Blue Ribbon Cleaning, Inc.

Billy J. Stokes, Jon M. Cope, and Hudson T. Ellis, Knoxville, Tennessee, for the appellee, Charles E. Leatherwood.

**OPINION**

**I.**

On June 17, 2005, Charles E. Leatherwood was allegedly injured when the motorcycle he was driving collided with a 2002 Chrysler Town & Country van ("the van") driven by Diana Lynn Tarrant. At the time of the accident, the van was leased from Huntington Bank and registered to Blue Ribbon Cleaning, Inc. ("Blue Ribbon"), a cleaning business operated and solely owned by Mrs. Tarrant and her husband, John Tarrant. Mr. Leatherwood subsequently filed suit against the Tarrants, alleging that the accident was caused by Mrs. Tarrant's negligence and seeking compensation for personal injury and property damage.

After the negligence lawsuit was filed against the Tarrants, a dispute arose between the Tarrants and their vehicle insurer, Allstate Insurance Company ("Allstate"), as to the amount of liability insurance coverage that was available on the van. Allstate's position was that the van was covered under a personal policy with liability limits of $100,000 per person and $300,000 per accident; the Tarrants maintained that the van was covered under a commercial policy with liability limits of $500,000. In October 2008, Allstate filed a declaratory judgment action[1] seeking a ruling that the van was covered under the personal policy and therefore subject to the lower liability coverage of $100,000/$300,000. The complaint alleged that in March 2005, before the accident, Mr. Tarrant requested that his Allstate agent, the Lonnie Jones Agency ("the Jones Agency") in Knoxville, move the van from the commercial policy to the personal policy because he wanted to save money on premiums and that, accordingly, the Jones Agency moved the van and two other vehicles from the commercial policy to the personal policy. In their answer, the Tarrants and Blue Ribbon denied that Mr. Tarrant directed the Jones Agency to move the van to the personal policy, alleged that the transfer to the personal policy was the Jones Agency's mistake, and requested a declaratory judgment that at the time of the accident the van was covered under the commercial policy.

---

[1] Allstate sued the Tarrants and Blue Ribbon, as well as Tennessee Farmers Mutual Insurance Company, as subrogee of Charles Leatherwood, and United States Liability Insurance Company, as liability carrier for Blue Ribbon.

At the trial on the complaint for declaratory judgment, the trial court heard the testimony of Lonnie Jones, owner of the Jones Agency; Patricia Smith, an insurance producer employed by the Jones Agency; Kathleen Collard, an Allstate field support representative; and Mr. Tarrant.

Mr. Jones testified that the Tarrants have been clients of the Jones Agency since 1990. He stated that Mr. Tarrant usually called him each year before renewing his commercial policy in an attempt to lower his premium payments. "[H]e's very watchful of his money and he calls me yearly particularly on his commercial and he gives me this direction, now, Lonnie, if you can't beat this, I'm going to leave you." Mr. Jones testified that a vehicle's usage determines whether it should be insured under a commercial policy or a personal policy. He admitted that the Jones Agency was aware that the van was leased in the name of Blue Ribbon and, therefore, it should have been on the commercial policy. However, he also stated that the van would have been moved from the commercial policy to the personal policy "just if [Mr. Tarrant] asked. . . . We take the directive of the insured to do that." While Mr. Jones did not recall any conversation with Mr. Tarrant in Spring of 2005, when Mr. Tarrant allegedly requested that the van be moved to the personal policy, Mr. Jones testified that if Mr. Tarrant called him at that time, he would have referred Mr. Tarrant to Patricia Smith, one of the agents employed at the Jones Agency.

Ms. Smith is a licensed insurance agent or insurance producer[2] and had been employed at the Jones Agency since March of 2004. She admitted that she did not recall her conversation with Mr. Tarrant or any of the changes that she made to the policies in March of 2005, and she retained no notes of her conversation with Mr. Tarrant. Her testimony was based on her usual practice — "I know how I do my job" — and on her review of policy billing histories and computer records she generated when she made the policy changes, none of which contain any information as to the discussion that transpired between herself and Mr. Tarrant or what his instructions to her were as to coverage. Based on computer printouts generated by the Jones Agency, she testified that when the van was originally leased in 2002, it was insured by itself under a commercial policy. Beginning in April of 2003, the van was insured under a discounted commercial fleet policy, along with a 1995 Lexus ES-300, a 2001 Econoline van, a 1998 Dodge Ram van, a 1984 Dodge Ram wagon, and subsequently, a 2003 DR-3500 Dodge truck. At the time of Mr. Tarrant's call, Allstate also insured a 1993 BMW 325 I and a 2000 Spinker camper under the personal policy. Ms. Smith stated that when she spoke with Mr. Tarrant, the commercial policy was due for renewal in early April of 2005 and that he was concerned with obtaining a lower premium. She stated that at Mr. Tarrant's

---

[2] "'Insurance producer' means a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance[.]" Tenn. Code Ann. § 56-6-102(6) (2008).

request, she moved the van, the Lexus, and the Dodge truck from the commercial policy to the personal policy and moved the BMW to a separate personal policy in the name of Mr. Tarrant's son.

Ms. Smith testified that in her conversation with Mr. Tarrant about transferring the three vehicles to the personal policy, she "would have discussed that he was using [these vehicles] in a personal manner. That would have been one of the things that would have prompted me, usage." Referencing an event history showing information that she entered into the Jones Agency's computer on March 23, 2005, Ms. Smith noted that the movement of the van and the other two vehicles to the personal policy was processed on that date, with an effective date of April 4, 2005. She admitted that at the time she made the coverage changes, the Jones Agency's records incorrectly showed Mr. Tarrant as the van's registered owner and did not show that the van was leased from Huntington Bank and was registered in the name of Blue Ribbon. In her prior deposition testimony, Ms. Smith stated that it would not have been appropriate to put the van on a personal policy if it was owned or leased by Blue Ribbon and that a company-owned vehicle should never be on a personal policy. At trial, when questioned about moving a vehicle registered to a commercial entity to a personal policy, Ms. Smith stated, "At that time I would figure that Mr. John Tarrant has an insurable interest in that vehicle and the fact that he's going to use it as a pleasure vehicle or personal vehicle, okay. And that he wanted me to do these things, that's what prompted me to do them." Ms. Smith said that had she known that Blue Ribbon owned the van it would have been her practice to advise Mr. Tarrant to have it titled in his name, although she does not remember whether she did so in this instance. Ms. Smith testified that she would not have moved the van to the personal policy unless Mr. Tarrant had requested the transfer. Although she stated that he requested the transfer, she admitted that she had no personal recollection of such a conversation. Ms. Smith did not testify that she moved the van to the personal policy because of a misunderstanding or confusion over the meaning of the word "van."

Ms. Collard, an Allstate field representative from Allstate's national support center in Roanoke, Virginia, testified that a letter from Allstate bearing the signature of Mr. Jones was mailed to Mr. Tarrant on March 25, 2005. This letter alluded to changes in insurance coverage but did not state the amount of coverage available on each vehicle. The letter stated in part as follows:

> The accompanying Amended Policy Declarations includes these changes:
> The addition of your 03 Dodge Trk Dr3500 2wd.
> The addition of your 95 Lexus Es300.
> A change in insurance coverage for your 02 Chrysler Town-Country.

-4-

A change in description for your 02 Chrysler Town-Country.
The addition of the passive restraint discount 02 Chrysler Town-Country.
The deletion of one or more operators.

The letter further noted that the "coverages and limits you carry for your vehicles, and the costs of those coverages, are listed in detail on the enclosed Amended Policy Declarations." The enclosure, however, was not admitted into evidence at the trial. Mr. Tarrant did not testify that he received it, nor did the trial court make any finding of fact that he received it.[3]

Ms. Collard also confirmed that on April 15, May 16, and June 15, 2005, Allstate mailed to Blue Ribbon Cleaning, Inc. "commercial automobile insurance" bills that did not include the van among the list of covered vehicles, and these bills were paid. Ms. Collard also confirmed that on April, 20, 2005, and May 20, 2005, Allstate mailed "personal automobile insurance" bills to Mr. Tarrant that included the van among the list of insured vehicles, and these bills were paid. Ms. Collard testified that as a result of the transfer of the van and the other two vehicles from the commercial policy to the personal policy, there was a savings of $2,867.74 in premiums. The premium bills did not specifically state the amount of liability coverage available on the various insured vehicles.

Mr. Tarrant testified that he would regularly call the Jones Agency to discuss his premium. After he received the commercial policy renewal notice in early 2005 showing a "substantial increase" in the premium as compared to the previous year, he called the Jones Agency to see what could be done about lowering it. He stated that he never told an employee of the Jones Agency to remove the van from the commercial policy. "We got a quote back [from the Jones Agency] what it would cost for us to keep the vans in the commercial line and then what we could put everything else in the personal line." Mr. Tarrant attested that his instructions to the Jones Agency were "to put all the vans under the commercial policy." Mr. Tarrant testified that there was no question in his mind about the instructions he gave the Jones Agency. He further testified that when he talked to Ms. Smith, he did not know that the Jones Agency's records did not list Blue Ribbon as the titled owner of the van. He noted that the van was the only vehicle that he owned at the time that was titled in the name of the business and that "of all the vehicles [it] would have been the one

---

[3] Although the dissent states that in March, Mr. Tarrant was sent "The Amended Policy Declarations" which listed the amount of the van's liability insurance coverage and the amount of the premium, the Declarations admitted into evidence were not sent to Mr. Tarrant in March but rather were part of a packet of information sent to Mr. Tarrant as a result of a change in driver assignment that was effective on May 20, 2005 and resulted in a premium increase of $2.30.

for sure that would have remained in the commercial policy." He testified that use of the van was divided equally between business and personal use. He stated that he did not recall getting the March 25, 2005 letter from the Jones Agency indicating the changes in his coverage and that he did not know that the van had been moved to the personal policy until May 2009, when he and his attorney were reviewing his insurance records. Mr. Tarrant testified that until that time, although checks were written to pay the premium bills, he never looked at the premium bills. His daughter, whom he employs as his secretary, would make out the checks for payment of the bills, and "at a glance" he would sign them and send them to Allstate.

The trial court found that although Mr. Tarrant instructed the Jones Agency to place the vans under the commercial policy, maybe there had been a misunderstanding that resulted in the van being placed under the personal policy. The trial court determined that Mr. Tarrant had ratified the change in coverage because he had received the March 25, 2005 letter denoting changes to his coverage and had also received premium bills showing that the van was covered under the personal policy.[4] The trial court held that at the time of the accident, the van was covered under the personal policy, not the commercial policy. The Court of Appeals reversed the trial court, holding that Allstate failed to follow Mr. Tarrant's instruction that the van be covered under the commercial policy and that Mr. Tarrant's receipt of notification of the change in coverage and payment of premium bills reflecting the change did not absolve Allstate from liability. Allstate Ins. Co. v. Tarrant, No. E2009-02431-COA-R3-CV, 2010 WL 4188232 at *10 (Tenn. Ct. App. Oct. 21, 2010).

We granted Allstate's application for permission to appeal and address two issues: 1) whether Mr. Tarrant ratified the transfer of the van from the commercial policy to the personal policy; 2) if Mr. Tarrant did not ratify the transfer, whether Allstate is estopped from denying coverage of the van under the commercial policy.

**II.**

We begin our analysis with the trial court's findings of fact as to whether Mr. Tarrant instructed the Jones Agency to move the van from the commercial policy to the personal policy. Neither Mr. Jones nor Ms. Smith had any personal recollection of their conversation with Mr. Tarrant when he called the Jones Agency in March of 2005. Mr. Jones recalled no conversation with Mr. Tarrant and stated that he would have referred Mr. Tarrant to Ms. Smith. Ms. Smith testified that she had no independent recollection of her conversation

---

[4] The trial court did not find nor does the record show that Allstate provided Mr. Tarrant with a copy of either his commercial policy or personal policy between the time Allstate placed the van under the personal policy and the time of the accident.

with Mr. Tarrant or of any steps she took as a result of the conversation. Her testimony as to what transpired at that time was based on her review of the billing history. Although Mr. Jones denied that the Jones Agency made a mistake, at the same time he acknowledged the possibility of a mistake by the Jones Agency, stating that if the agency made a mistake, it was Mr. Tarrant's responsibility to notify the agency of the mistake upon his receipt of proof of insurance cards. In contrast, Mr. Tarrant testified that he specifically told the Jones Agency to "go ahead and put all of the vans in the commercial line, the ones we were using for business." This included "the '84 Dodge Ram, the '98 Dodge Ram, the Ford Econoline 150 and the Town and Country Van." He testified that there was no question in his mind that he gave the instruction to the Jones Agency to place the van on the commercial policy. The trial court found that Mr. Jones, Ms. Smith, and Mr. Tarrant were all credible witnesses and then specifically noted that Mr. Tarrant testified that "what he told them at the Jones [A]gency was look, his words were, put the vans on the commercial policy, put the other vehicles on the personal policy."

We review the trial court's findings of fact de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). As to the weight and credibility to be given the testimony of witnesses, we must afford considerable deference to the trial court's findings of fact based upon the court's assessment of live testimony. Dixon v. Travelers Indem. Co., 336 S.W.3d 532, 536 (Tenn. 2011); Padilla v. Twin City Fire Ins. Co., 324 S.W.3d 507, 511 (Tenn. 2010). Because a trial court is in a position to observe witnesses and assess their demeanor and other indicators of credibility, a trial court's determination of credibility will not be overturned on appeal unless there is clear and convincing evidence to the contrary. Hughes v. Metro. Gov't of Nashville & Davidson Cnty., 340 S.W.3d 352, 360 (Tenn. 2011); Wells v. Tenn. Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999). We construe the trial court's finding to be that Ms. Smith testified as to what she would have done based on her usual practice and that Mr. Tarrant testified as to what he did. The trial court's finding that Mr. Tarrant was credible implicitly constitutes a finding that Mr. Tarrant told Ms. Smith to place the van on the commercial policy. The trial court's finding that Ms. Smith was credible constitutes a conclusion that she testified truthfully that her *usual practice* would have been to follow the instruction of the insured and does not contradict the trial court's finding as to what Mr. Tarrant actually did. Based on the trial court's determinations as to the witnesses' credibility and the testimony of those witnesses, the inference is inescapable that Mr. Tarrant instructed Ms. Smith to place the van on the commercial policy and she failed to do so; her action of placing the van on the personal policy constituted a mistake by the Jones Agency.

The dissent is based on the premise that the trial court made a finding of fact that "the parties' coverage dispute arose from a 'good faith misunderstanding' regarding the meaning

of the word 'vans.'" This premise is not supported by the proof at trial. When announcing its decision, the trial court speculated as to what may have occurred, noting, "Well, maybe maybe maybe that this case only comes down to a misunderstanding about the definition of the word van." Later the trial court said "[b]ut the case may boil down to just nothing more than a misunderstanding about what one side honestly meant one thing about the word van and the other side honestly understood another thing about it." We disagree that a statement by the trial court that "maybe maybe maybe" there was a misunderstanding as to the meaning of the word "van" qualifies as a judicial finding of fact on which to base a legal conclusion. The trial court also subsequently stated, "I'm satisfied it is nothing more than a good faith misunderstanding about what the meaning of the word vans was." Given the court's prior equivocal statements, it is unclear whether this statement qualifies as a finding of fact based on proof before the court or is instead a conclusion based on nothing more than the court's speculation as to what might have happened. More importantly, there simply is no evidence to support the conclusion that there was a misunderstanding about meaning of the word "van." Neither Mr. Jones nor Ms. Smith testified that they were confused about what Mr. Tarrant meant when he referred to the van. Neither recalled any such discussion with Mr. Tarrant. While Mr. Tarrant speculated that "*if* [the Jones Agency wasn't] aware that [the Chrysler Town and Country van] was a van [that] may have been the reason that they miss understand [sic] the directions," (emphasis added) there is no proof that the Jones Agency was not aware that the subject van was a van. Because the underlying contingency of this statement was not met, it does not constitute a concession that the Jones Agency's failure to include the van on the commercial policy was the result of a misunderstanding as to the nature of the vehicle. The trial court could not reasonably infer from this testimony or any other evidence in the record that the Jones Agency's failure to list the van on the commercial policy was the result of a misunderstanding as to the definition of "van." See Underwood v. HCA Health Serv. of Tenn., Inc., 892 S.W.2d 423, 426 (Tenn. Ct. App. 1994) ("An inference is reasonable and legitimate only when the evidence makes the existence of the fact to be inferred more probable than the nonexistence of the fact."). Given Mr. Tarrant's instruction that all the vans be covered under the commercial policy, an instruction credited by the trial court as a finding of fact, listing the van in question on the personal policy was the Jones Agency's mistake. It makes no difference if the mistake was the result of the agency's negligence in failing to follow Mr. Tarrant's instructions or whether the mistake was the result of its confusion as to the nature of the vehicle.

## III.

Next, we address the question of whether Mr. Tarrant ratified the transfer of the van to the personal policy. The trial court determined that even if Mr. Tarrant did not authorize the transfer of the van to the personal policy and the Jones Agency made a mistake in making the transfer, Mr. Tarrant ratified the transfer when he continued to pay premiums on the

-8-

policies after receiving the March 25, 2005 letter and premium bills indicating that the van was covered under the personal policy.

In order for Mr. Tarrant to ratify Ms. Smith's mistake, Ms. Smith must have been acting in the stead of Mr. Tarrant and for his benefit when the van was transferred to the personal policy. "Ratification of a contract occurs when one approves, adopts, or confirms a contract previously executed by another[,] in his stead and for his benefit, but without his authority." Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 270 (Tenn. 2001) (alteration in original) (internal quotation marks omitted); Harber v. Leader Fed. Bank for Sav., 159 S.W.3d 545, 552 (Tenn. Ct. App. 2004).

The Jones Agency did not act in the stead of Mr. Tarrant in making the policy change. "Stead" is defined as "the place of a person or thing as occupied by a successor or substitute." Webster's Encyclopedic Unabridged Dictionary of the English Language 1390 (1989). Mr. Tarrant acted on his own behalf in requesting that all the vans be placed on the commercial policy and the other vehicles placed on the personal policy. Ms. Smith, by performing the clerical tasks necessary to implement Mr. Tarrant's request, acted in the place of Allstate, not Mr. Tarrant. Ms. Smith did not perform any task that Mr. Tarrant would have been able to perform himself since he did not have access to the Allstate computer system.

This is consistent with the General Assembly's determination that in disputes arising out of an application for insurance or an insurance policy, the insurance producer, which in this case is the Jones Agency, is the agent of the insurer, Allstate, and not the insured:

> [a]n insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary.

Tenn. Code Ann. § 56-6-115(b) (2008).

This statute serves the purpose of preventing an insurance company "'from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted'" and of "'protect[ing] an applicant who relies on such representations or actions,'" and the statute is to be liberally construed in favor of the insured. Bill Brown Constr. Co. v. Glen Falls Ins. Co., 818 S.W.2d 1, 4 (Tenn. 1991) (quoting 15 Tenn. Jur. Insurance § 9 (1984)). Declaring the insurance producer to be the agent of the insurer, not the insured, is tantamount to declaring that the producer acts in the stead of the insurer, not

the insured, an "agent" being "[o]ne who is authorized to act for or in place of another; a representative." Black's Law Dictionary 64 (7th ed. 1999). Based on Tennessee Code Annotated section 56-6-115(b), an insurance producer acts in the place of the insurer and not the insured. Ms. Smith merely listened to Mr. Tarrant and assumed the place of Allstate by entering his requests, as she understood them, into the insurer's system. See also Gen. Accident Fire & Life Assurance Corp. v. Browne, 217 F.2d 418, 422 (7th Cir. 1954) (holding that insurance agency was acting as agent of insurer, not insured, in acceding to insured's request to keep him insured against liability in the operation of his automobile, stating "[m]ere attention to the needs of a customer does not make a business man the agent of a customer.")

Tennessee Code Annotated section 56-6-115(b) applies to the renewal of an insurance policy as well as the application for the original policy. In Maryland Casualty Co. v. McTyier, 266 S.W. 767 (Tenn. 1924), we construed the predecessor statute to Tennessee Code Annotated section 56-6-115(b), which also referred to the "application," and not specifically to a renewal policy.[5] We quoted with approval the following language from Schoener v. Hekla Fire Ins. Co., 7 N.W. 544, 546-47 (Wis. 1880), a Wisconsin case construing that state's similar statute:

> "[T]he Legislature has assumed the right to regulate the business of insurance, and prescribe the manner in which it shall be conducted in this state. It has declared that whoever solicits insurance on behalf of an insurance company, or makes any contract of insurance, or in any manner aids or assists in making such contract, or *transacts any business for the company*, shall be held an agent of such company to all intents and purposes."

McTyier, 266 S.W. at 769 (emphasis added). Accentuating the statutory language "and the policy issued in consequence thereof," the McTyier Court stated that "[i]t was manifestly not the intention of the Legislature to restrict the agency representation of the [insurance] company to matters relating to the application only, but to extend it to all matters relating to

---

[5] As quoted by the McTyier Court, this earlier statute provided that

> "any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and no effect whatever . . . ."

McTyier, 266 S.W. at 767 (quoting Chapter 442, Acts of 1907).

the policy issued." Id. at 768; see also T.H. Hayes & Sons v. Stuyvesant Ins. Co., 250 S.W.2d 7, 11 (Tenn. 1952); Tenn. Storm Window & Hardware Co. v. Newark Ins. Co., 506 S.W.2d 792, 795-96 (Tenn. Ct. App. 1973). Renewal of the policy issued is a "matter[] relating to the policy issued." We find no distinction between the language of the earlier statute construed by the Court in McTyier and that of the statute in its current form, which replaces the phrase "the policy issued in consequence of [the application]" with "any policy issued in connection with the application." If anything, the substitution of the adjective "any" for "the" in the current version lends stronger support to the conclusion that the statute is intended to encompass a renewal policy as well as the policy originally issued.

Our conclusion is in accord with the Arkansas Supreme Court's decision in Coal Operators Casualty Co. v. F.S. Neely Co., 243 S.W.2d 744 (Ark. 1951). In that case, the insured, a coal mining business, purchased a workers' compensation insurance policy through an insurance agency. Id. at 744. The policy covered the insured's business operations in both Arkansas and Oklahoma. Id. The policy was renewed the next year with coverage extending to both states; however, when it was renewed a third time, it was issued to cover operations solely in Oklahoma. Id. at 745. After the third renewal, one of the insured's employees was injured in Arkansas, and the insurance company denied coverage. Id. In addressing the question of whether the insurance agent was a broker acting as agent for the insured or an agent of the insurance company, the Arkansas Supreme Court considered Arkansas and Oklahoma statutes similar to section 56-6-115(b), which were respectively quoted as follows:

> "Any person, who shall hereafter solicit insurance or procure applications, shall be held to be soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding."

Neely Co., 243 S.W.2d at 745 (quoting Ark. Stats. § 66-302).

> "Any person who shall solicit and procure an application for insurance shall, in all matters relating to such application for insurance, and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

Neely Co., at 745-46 (quoting Okla. Stats. tit. 36, § 197). The Oklahoma statute, like section 56-6-115(b), referred only to an application for insurance and a policy issued in connection

-11-

with the application and did not specifically include a renewal, as did the Arkansas statute. The Court, however, determined that both statutes were to the same effect and that, as applied to the facts of the case, both statutes made the insurance agent the agent of the insurance company in issuing the renewal. Id. at 746.

We find that Ms. Smith did not assume the place of Mr. Tarrant, and she was also statutorily precluded from acting in his stead. Nor did Ms. Smith act for the benefit of Mr. Tarrant. "Benefit" is defined as "[p]rofit or gain." Black's Law Dictionary 150 (7th ed. 1999). Mr. Tarrant did not realize a profit or gain from Ms. Smith's actions. While Mr. Tarrant's premiums were lower after the transfer,[6] he also received commensurately lower coverage and assumed greater personal risk. While Allstate received a lower premium payment, it enjoyed a commensurate decrease in liability exposure. Consequently, in terms of the change in premium rate and risk exposure, neither party enjoyed a positive benefit. Allstate did, however, otherwise benefit from the transaction in that it was able to retain Mr. Tarrant's business. Mr. Jones testified that Mr. Tarrant had threatened to take his business elsewhere if nothing could be done to lower his premiums.[7]

Not only did Allstate actually receive a benefit from Ms. Smith's mistake, the evidence also demonstrates that Ms. Smith was primarily motivated to benefit Allstate. The Jones Agency acted in furtherance of its goal of retaining Mr. Tarrant's business, which inured to the benefit of Allstate. The Jones Agency performed no act or service for Mr. Tarrant inconsistent with obtaining insurance business for itself and Allstate. Further, Mr. Jones admitted that his agency's primary allegiance is to Allstate, not Mr. Tarrant, stating: "[T]he company is primary. The insured is next in line. So if we do make a mistake, it is the

---

[6] Although Ms. Collard testified that Mr. Tarrant realized a total premium savings of $2,867.74 as a result of the transfer of the van and the other two vehicles to the personal policy, there was no testimony as to what portion of this amount was specifically attributable to the transfer of the van. Obviously, a significant portion, if not the majority, of the $2,867.74 premium decrease can be ascribed to the change in coverage on the 1985 Lexus and the 2003 Dodge truck, which were transferred from the commercial policy to the personal policy at the same time as the van.

[7] Allstate also appears to have benefitted in another respect. Ms. Smith testified that at the time of the transfer, the van was insured under a commercial fleet policy that carried a lower premium than a non-fleet policy. However, Ms. Smith stated that "[y]ou have to have five vehicles for a commercial policy to obtain the fleet discount." The transfer of three of the six vehicles that, prior to March 2005, had been covered under the commercial policy brought the total number of vehicles insured under that policy below the minimum five required to qualify for the fleet premium discount. Consequently, an advantage accrued to Allstate because the premium rate per vehicle on each of the three vehicles remaining on the commercial policy increased without any increased liability exposure to Allstate. While it is true that the commercial fleet discount would have been lost even had the van not been transferred from the commercial policy, it is apparent that, on the whole, the transaction benefitted Allstate, not Mr. Tarrant.

-12-

obligation of the insured to correct us." The only negative consequence that the Jones Agency would have experienced had it refused to insure Mr. Tarrant's property would have been the loss of Mr. Tarrant as a customer, with the corresponding loss of its percentage of the insurance premiums he would have paid.

To conclude, since the Jones Agency neither acted in the place or stead of Mr. Tarrant, nor for his benefit, Mr. Tarrant could not have ratified its mistake by continuing to pay the premiums after receiving the March 25, 2005 letter and premium notices indicating that the van had been moved to the personal policy.

## IV.

The final issue we address is whether Allstate was estopped from denying coverage of the van under the commercial policy.[8]

An insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company. See Vulcan Life & Accident Ins. Co. v. Segars, 391 S.W.2d 393, 397 (Tenn. 1965); Magnavox Co. of Tenn. v. Boles & Hite Constr. Co., 585 S.W.2d 622, 627 (Tenn. Ct. App. 1979); Henry v. S. Fire & Cas. Co., 330 S.W.2d 18, 32 (Tenn. Ct. App. 1958); 44A Am. Jur. 2d Insurance § 1580 (2003); 46 C.J.S. Insurance § 1207 (2007).

The Court of Appeals determined that this rule cannot be utilized to estop Allstate from denying coverage of the van because, in fact, Allstate did not deny coverage but allowed coverage under the personal policy. See Tarrant, 2010 WL 4188232, at *9. We do not agree. Allstate seeks to deny coverage under the commercial policy and is therefore subject to estoppel as to the commercial policy. It is immaterial that coverage of the van is allowed under the personal policy. The Court of Appeals' incorrect reasoning undermines the rule's function in protecting the insured from the mistakes of the insurance agent.

---

[8] Allstate argues that we are precluded from applying the rule of estoppel because this issue was not raised at trial. However, the record belies this assertion and shows that the issue of estoppel was presented to the trial court by both Mr. Leatherwood's attorney and Mr. Tarrant's attorney. The trial brief of Mr. Leatherwood's attorney cited case law pertaining to estoppel, and the matter of estoppel was also raised by Mr. Tarrant's attorney in closing argument when he stated "Allstate can't benefit from a mistake, your Honor. The law is pretty clear on that. They can't benefit at the expense of their insured on a mistake they made." Tennessee Rule of Civil Procedure 15.02 provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." We deem the issue of estoppel to have been tried by implied consent of the parties, and the issue is properly considered by this Court.

-13-

The insurer – not the insured – should bear the consequences of an error by the insurer's agent. The rationale for estopping an insurance company from taking advantage of its agent's mistake was noted by this Court in Vulcan:

> "[T]he man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer."

391 S.W.2d at 397.

Allstate argues that Mr. Tarrant should be denied coverage under the commercial policy because he failed to discover the change in coverage on the van when he received the March 25, 2005 letter and when he paid the subsequent premium bills. There is no proof that Allstate sent Mr. Tarrant a policy after the change in coverage.[9] The March 25, 2005 letter mailed to Mr. Tarrant noted there was a change in coverage, but did not state what the change in coverage was. The subsequent premium bills sent to Mr. Tarrant and Blue Ribbon were either for commercial or personal coverage and did not state the amount of coverage. It was not apparent from the face of the March 25, 2005 letter or the premium bills that the coverage on the van had decreased from $500,000 to $100,000 per person/$300,000 per accident. However, even if the letter and bills were deemed to be clear disclosures of the changes in his coverage, Allstate should not be relieved of liability due to its agent's error because Mr. Tarrant failed to discover the error after reading the letter and premium bills. As stated in Henry,

_____

[9] Even had Allstate sent Mr. Tarrant a copy of the policy, courts have taken judicial notice of the fact that an insured will customarily accept and retain an insurance policy without reading it. Henry, 330 S.W.2d at 32; Brewer v. Vanguard Ins. Co., 614 S.W.2d 360, 363 (Tenn. Ct. App. 1980); Smith v. Continental Ins. Co., 469 S.W.2d 138, 147 (Tenn. Ct. App. 1971).

> Where the [insurance] company or its agent delivers to the insured a policy which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended. And the insured, if he is ignorant of the defect and has no special competence or experience in insurance matters is privileged . . . to rely upon that representation without reading or being charged with the contents of the policy.

Id., 330 S.W.2d at 32. In Henry, the insured plaintiffs operated a logging business and sought compensation from their insurer for damages incurred after one of their logging trailers was involved in an accident. Id. at 20. Before the accident, the insurer had issued to the plaintiffs policies containing a clause that excluded coverage of the trailer. Id. at 20-21. The court held that if the jury found that the plaintiffs had requested that the insurer's agent write the policies to provide full and complete liability coverage on all of their equipment and the agent erred in failing to comply with the plaintiffs' request, the insurer would be estopped from denying full coverage, even though the plaintiffs failed to read their policies. Id. at 32.

Mr. Tarrant requested that the van be covered under the commercial policy. Despite Allstate's implicit assurance that this request would be complied with, it was not, due to the mistake of Allstate's agent. Under these circumstances, Allstate is estopped from denying coverage, notwithstanding Mr. Tarrant's failure to discover the error from the mailings he received. See also, Magnavox, 585 S.W.2d at 628 (Insurer not guilty of contributory negligence in accepting without protest policies containing exclusionary clause where insured was "lulled into a false sense of security" by insurance agent.)[10]

To hold otherwise would place the burden on the insured to discover and protect himself or herself from mistakes of the insurer's agent and relieve the insurer from any responsibility for the errors of its agent. Mr. Tarrant relied on the Jones Agency to provide the insurance coverage he requested and as a result of the Agency's mistake, the coverage was not provided. Accordingly, Allstate is estopped from denying coverage of the van under the commercial policy. We do not disagree with the dissent's assertion that insurance policies are as a general matter controlled by basic contract principles. However, as to the

---

[10] In Morrison v. Allen, 338 S.W.3d 417 (Tenn. 2011), we held that the financial planner who was employed by the insured to procure an incontestable insurance policy was liable to a beneficiary under the policy for breach of contract because the planner failed to correctly fill out the insurance application form on behalf of the insured. The beneficiary was allowed recovery despite the insured's failure to read the application and correct the misstatement. Id. at 429.

specific matter of a mistake by an insurance agent as occurred in this case, the common law clearly dictates that the insurer is estopped to deny coverage.

This is not a "failure to read" case, but one in which the insured instructed his insurance agent to make a change in the insured's insurance coverage, and the agent made a mistake in carrying out the instruction. As a result, the insured did not receive the coverage he requested. Under these circumstances, it is the insurer who must bear the consequences for the loss, not the insured. To hold otherwise would ignore the facts and well-settled law and allow an insurance agent or company to err at will without any consequences and place the full burden on the insured to discover and correct the insurer's mistake.

## V.

We hold that the Jones Agency's mistake in transferring the van from the commercial policy to the personal policy was not subject to ratification by Mr. Tarrant because in effecting the transfer, the Jones Ageny did not act in Mr. Tarrant's stead or for his benefit. We further hold that because the van was transferred from the commercial policy as the result of the mistake of the Jones Agency, Allstate is estopped from denying coverage of the van under the commercial policy. Accordingly, the van is insured under the commercial insurance policy issued by Allstate. This cause is remanded to the trial court for further proceedings consistent with this opinion, which shall include determining any additional amount of premiums due Allstate and the Jones Agency for coverage of the van under the commercial policy. The judgment of the Court of Appeals is affirmed on different grounds.[11] Costs are assessed against appellant, Allstate Insurance Company, and its surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

---

[11] We may affirm the judgment of a lower court on grounds different from those relied upon by the court below where the lower court has reached the correct result. Cont'l Cas. Co. v. Smith, 720 S.W.2d 48, 50 (Tenn. 1986).