IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2018 Session

## WAYNE JONES, JR. ET AL. v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission, No. T20130811
Robert N. Hibbett, Commissioner

_____

No. M2017-02198-COA-R3-CV

_____

This wrongful death action arises from the tragic death of a state university student-athlete during football practice. The student's parents filed a claim against the State of Tennessee in the Tennessee Claims Commission. After a trial, the Commissioner found that the parents had failed to prove by a preponderance of the evidence that: (1) the head athletic trainer violated the applicable standard of care after the student's collapse; (2) the trainer's negligence was the cause in fact of the student's death; and (3) the university was otherwise negligent in caring for the student after his collapse. Because the evidence does not preponderate against the Commissioner's causation findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Kirk L. Clements, Nashville, Tennessee, for the appellants, Wayne Jones, Jr. and Sonya Johns.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Heather C. Ross, Senior Counsel, and Joe Ahillen, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.**

On November 7, 2012, Wayne Jones III, a cornerback for the Tennessee State University football team, suffered a sudden cardiac arrest during practice. The athletic trainers called for emergency assistance. Sadly, the paramedics were unable to resuscitate him, and Mr. Jones was later pronounced dead at an area hospital. Mr. Jones's parents blame TSU for their son's death, contending that his life could have been saved if the athletic staff had recognized and properly treated his sudden cardiac arrest.

Football practice that day began as usual at 4 p.m. The team warmed up with ten to fifteen minutes of stretching. After a punt drill, the players divided into position groups for individual drills. Coach Edward Sanders, the special teams coordinator and defensive backs coach, directed the drills that day for the defensive backs. During a "deep ball" drill, Mr. Jones caught the ball, began his return run, and collapsed face down to the ground. When he failed to rise or respond to questions, Coach Sanders called for an athletic trainer. The first to arrive was Sydney McGhee, a student trainer. She was quickly followed by Monroe Abram, the head athletic trainer.[1] Coach Sanders moved the remaining players to another part of the field.

Both Ms. McGhee and Mr. Abram were certified in cardiopulmonary resuscitation (CPR) and the use of an automated external defibrillator (AED). An AED is a portable device that can both analyze a patient's heart rhythm and, if necessary, provide an electric shock to restore the heart's normal rhythm. TSU had an AED on the football practice field in the athletic trainers' equipment van.

Mr. Abram's initial assessment was that Mr. Jones was breathing and had a pulse. But he was nonresponsive, and his breath sounds were abnormal. Some witnesses thought he was snoring. Ms. McGhee called for emergency medical assistance. Because he did not suspect sudden cardiac arrest, Mr. Abram did not immediately send for an AED. While Ms. McGhee was explaining the situation to the emergency operator, Mr. Jones had a muscle spasm that resembled a seizure. Then, he stopped breathing. Mr. Abram immediately began CPR and sent for an AED. He continued CPR until the paramedics arrived. He later explained that he never used the AED because it did not arrive before the paramedics took over Mr. Jones's care.

When the paramedics arrived, Mr. Jones was not breathing and had no pulse. They continued CPR and also applied an AED, which advised defibrillation. Although

---

[1] Mr. Abram had been a certified athletic trainer since 1990. Certified athletic trainers are licensed medical personnel in Tennessee. *See* Tenn. Code Ann. § 63-24-103 (2017).

Mr. Jones received three electric shocks on the field and one more during transport to the hospital, he did not revive. He was pronounced dead at 6:33 p.m.

Mr. Jones's autopsy report listed his cause of death as a fatal arrhythmia of his heart due to scar tissue. The medical examiner noted that his heart's right atrium and ventricle were enlarged. And further microscopic analysis found extensive amounts of scar tissue throughout the left and right ventricles. The cause of the scar tissue was unknown.

Mr. Jones's parents, Wayne Jones, Jr. and Sonya Johns, filed a wrongful death action against the State of Tennessee in the Tennessee Claims Commission. They alleged that TSU failed to establish or execute a satisfactory emergency action plan and/or failed to properly train their athletic personnel to recognize and/or properly respond to signs of sudden cardiac arrest. They were subsequently permitted to amend their complaint to allege that TSU's licensed medical personnel failed to use all means available to resuscitate Mr. Jones, including the use of an AED, and that TSU failed to ensure that its athletic staff would have an AED readily accessible.

Following a three day trial, the Commissioner found, among other things, that the "failure to attach the AED did not cause Mr. Jones'[s] death. The cause of Mr. Jones'[s] death was fatal arrhythmia of the heart due to scar tissue in his heart." The Commissioner ruled that Mr. Jones's parents failed to prove by a preponderance of the evidence that: (1) Mr. Abram violated the standard of care applicable to a certified athletic trainer; (2) as a proximate result of Mr. Abram's alleged negligent act or omission, Mr. Jones suffered death which would not otherwise have occurred; and (3) the TSU staff was negligent in its care of Mr. Jones after his collapse. This appeal followed.

## II.

We apply the same standard of review to the judgment of the Claims Commission as we do to appeals from a bench trial. Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 2018). We presume that the findings of fact are correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). In weighing the preponderance of the evidence, we give great deference to findings based on the trial court's assessment of the weight or credibility of live testimony. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). We review conclusions of law de novo, with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

Although Mr. Jones's parents have raised numerous issues, one issue is dispositive of this appeal: whether the evidence preponderates against the Commissioner's finding

that TSU's negligence was not the cause in fact of Mr. Jones's death. An essential element of any negligence action is proof that the defendant's conduct was the cause in fact of the injury. *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985). "Proof of negligence without proof of causation is nothing." *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 181 (Tenn. 1992) (quoting *Drewry v. County of Obion*, 619 S.W.2d 397, 398 (Tenn. Ct. App. 1981)). Cause in fact "means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). As claimants, Mr. Jones's parents had the burden of showing by a preponderance of the evidence that TSU's negligence "more likely than not" caused Mr. Jones's death. *See id.* at 598-99. Causation must be shown as "a matter of probability, not possibility." *Id.* at 602. In a healthcare liability action, causation in fact must be demonstrated to a reasonable degree of medical certainty. *Id.*; *see also* Tenn. Code Ann. § 29-26-115(a)(3) (2012) (incorporating the traditional test for cause in fact in a healthcare liability action). The key question here is whether Mr. Jones, more likely than not, would have survived his sudden cardiac arrest absent TSU's alleged negligence. *See Kilpatrick*, 868 S.W.2d at 602-03 (explaining the requirement of proving causation in fact when the injured party had a pre-existing condition).

To establish causation, the student's parents submitted the deposition testimony of Dr. John Bright Cage. Dr. Cage, a practicing cardiologist, opined, with a reasonable degree of medical certainty, that more likely than not, Mr. Jones would have survived his sudden cardiac arrest if prompt CPR and early defibrillation had occurred. He defined early defibrillation as within five minutes of Mr. Jones's collapse. After five minutes, the likelihood of successfully resuscitating Mr. Jones diminished.

In Dr. Cage's opinion, the scar tissue noted in the autopsy report was caused by a condition called arrhythmogenic right ventricular cardiomyopathy or ARVC. ARVC is a rare genetic abnormality in which healthy tissue in the right ventricle is replaced with fibro-fatty tissue. He explained that Mr. Jones's scar tissue created an electrical instability that led to his sudden cardiac arrest. But Dr. Cage opined that Mr. Jones's heart could have been returned to a normal rhythm with early defibrillation. According to Dr. Cage, if Mr. Jones had been successfully resuscitated, his prognosis, even with ARVC, would have been very good to excellent.

Dr. Cage explained that early defibrillation provides the best opportunity for successful resuscitation. He relied on medical studies that showed that the likelihood of survival from a sudden cardiac arrest is dramatically higher if CPR or AED is performed in the first three to five minutes after collapse. Survival chances decrease 10% every minute after collapse without intervention. Ten minutes after collapse, the chance of survival without CPR and AED is less than 50%.

When asked whether the cause of the sudden cardiac arrest impacted the effectiveness of an electric shock, Dr. Cage replied "[n]obody knows that answer."

4

According to Dr. Cage, defibrillation within five minutes of a sudden cardiac arrest is typically effective regardless of the cause.

The State's causation expert, Dr. Hal Roseman, testified in person. He was qualified as an expert in both cardiology and epidemiology.[2] For a number of reasons, Dr. Roseman disagreed with Dr. Cage's ARVC diagnosis. He explained that ARVC is a pathologically distinctive condition easily diagnosed in an autopsy. According to Dr. Roseman, several hallmarks of the condition were not present. There was no fatty replacement of the heart muscle or inflammation, as would be typical with ARVC. And Mr. Jones's scar tissue was not confined to the right ventricle or to one layer of the heart, but was diffuse throughout the heart and its layers. The enlarged right atrium also contraindicated ARVC. Typically, only the right ventricle would be enlarged. Finally, there was no family history of ARVC or sudden cardiac arrest. Since ARVC was a genetic disorder, he would expect to find other family members with the same abnormality.

Unlike Dr. Cage, Dr. Roseman opined that the underlying pathology of the patient's heart could have a profound impact on resuscitation efforts. Here, the scar tissue in Mr. Jones's heart interfered with the normal electrical patterns in his heart, allowing rogue electrical impulses to alter the heart's rhythm. Dr. Roseman testified that, in the same way, scar tissue can interfere with an AED-administered electric shock. In his opinion, use of an AED anywhere from two to seven minutes after Mr. Jones's collapse would not have been successful because of his extensive scar tissue, as evidenced by the inability of the paramedics to revive Mr. Jones.

Dr. Roseman conceded that he did not find specific data on survival rates for a patient with Mr. Jones's condition. But he explained that his opinion was based on his knowledge of cardiology and medical literature on the effectiveness of defibrillation on patients with similar conditions.

Dr. Roseman also cited several studies that indicated that survival rates for out-of-hospital sudden cardiac arrests are low even when CPR and AED are used. He agreed that early CPR and defibrillation increase a patient's chance of survival. But even with early defibrillation, the pathology of the patient's condition impacts the survival rate. This is particularly true with young athletes because of the types of conditions that cause sudden cardiac arrest in young adults. Based on the condition of Mr. Jones's heart, Dr. Roseman opined that he had a less than average chance of survival.

In a vigorous cross-examination, the parents' attorney attacked the basis for Dr. Roseman's opinions. He questioned Dr. Roseman's analysis of the medical literature

---

[2] Dr. Roseman explained that epidemiology is the study of the causes and effects of disease conditions in the general population.

5

and maintained that he had misinterpreted the relevant studies or blatantly ignored them. Yet Dr. Roseman did not yield. He defended his methodology and explained at length how he reached his conclusions.

The Commissioner determined that Dr. Roseman's opinions were "more congruent with the findings of the autopsy." And, based on that testimony, the Commissioner found that Mr. Jones would not have survived his sudden cardiac arrest even "if he had received CPR and an AED shock within five minutes of his collapse."

The challenge of Mr. Jones's parents on appeal is two-pronged. First, they contend that Dr. Roseman's testimony was irrelevant. Second, they maintain his testimony was entitled to little or no weight because it lacked a scientific basis.

We cannot agree that Dr. Roseman's testimony was irrelevant to the causation issue. Contrary to the parents' assertions, Dr. Roseman did not merely testify that "in general, the survival rate of an out of hospital [sudden cardiac arrest] is less than 50%." Dr. Roseman specifically opined that, more likely than not, Mr. Jones would not have survived his sudden cardiac arrest even if he had received defibrillation within five minutes of his collapse.

Mr. Jones's parents also contend that Dr. Roseman's opinions lacked a sufficient scientific basis. *See McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997) (explaining that Tennessee Rules of Evidence require a determination of the scientific validity and reliability of evidence relied upon by expert witnesses). But they are not challenging the admissibility of Dr. Roseman's testimony, merely the weight it should be given. "[T]he weight to be given to stated scientific theories, and the resolution of legitimate but competing scientific views, are matters appropriately entrusted to the trier of fact." *Id.*; *see also State v. Scott*, 275 S.W.3d 395, 410 (Tenn. 2009) (affirming the trier of fact's role in assessing the weight to be afforded to expert testimony); *Johnson v. Richardson*, 337 S.W.3d 816, 824 (Tenn. Ct. App. 2010) ("After the trial court determines that the testimony is admissible, the weight and credibility to be given to the testimony lies with the trier of fact."). We afford great deference to the Commissioner's assessment of the weight to be given to Dr. Roseman's opinions. *See Allstate Ins. Co.*, 363 S.W.3d at 515. We find no basis to overturn that assessment here.

In sum, we do not find the challenges to Dr. Roseman's testimony availing. The testimony of Dr. Roseman was relevant; the testimony related to the issue of medical causation. And the Commissioner acted within his province in assigning greater weight to Dr. Roseman's causation testimony than the testimony of the expert offered by Mr. Jones's parents.

6

## III.

The evidence does not preponderate against the Commissioner's finding that TSU's alleged negligence was not the cause in fact of Mr. Jones's death.  So we affirm the dismissal of his parents' claim.

.

_____
W. NEAL McBRAYER, JUDGE