IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2014 Session

## MARK EDWARD HOLIFIELD v. MICHELE LYNN BILLINGS HOLIFIELD

**Direct Appeal from the Chancery Court for Madison County**
**No. 66755      James F. Butler, Chancellor**

_____

**No. W2012-00806-COA-R3-CV - Filed February 10, 2014**

_____

Plaintiff Husband appeals the trial court's division of marital property and awards of transitional alimony, alimony in futuro, and alimony in solido in this divorce action. Finding no abuse of discretion on the part of the trial court, we affirm. Husband also appeals the trial court's judgment holding him in contempt for failing to comply with the trial court's order to pay to Wife one-half of a health savings account. We affirm on this issue. Wife's request for attorney's fees on appeal is granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

C. Timothy Crocker, Michael A. Carter, J. Noble Grant, III and Ryan Landry Hall, Milan, Tennessee, for the appellant, Mark Edward Holifield.

Mitchell David Moskovitz, Erin Y. Phillips and Mary Morgan Whitfield, Memphis, Tennessee, for the appellee, Michele Lynn Billings Holifield.

**MEMORANDUM OPINION**[1]

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited

(continued...)

This divorce action follows a twenty-six-year marriage. Mark Edward Holifield, DDS (Husband) and Michele Lynn Billings Holifield (Wife) were married in September 1984. They have two adult children. The parties separated in January 2010; both were 46 years of age when the trial in this matter began in November 2010.

On February 5, 2010, Husband filed a complaint for divorce in the Chancery Court for Madison County. In his complaint, Husband alleged irreconcilable differences, inappropriate marital conduct, and adultery as grounds for divorce. He prayed for an absolute divorce, an equitable distribution of property and debt, and costs.

Wife answered and counter-claimed for a divorce on the grounds of inappropriate marital conduct and irreconcilable differences on February 12, 2010. In her answer, Wife admitted to inappropriate marital conduct but denied that any of said conduct caused the dissolution of the parties' marriage. In addition to her prayer for divorce, Wife prayed for injunctive relief asserting that she and Husband employed 40 people in three locations in their dental practice business; that she was the manager/administrator of the business; that Husband had removed her name from all of the parties' personal and business accounts and refused to tender her salary or pay her any support; and that Husband was engaging in a course of conduct that was detrimental to the parties' business and to their personal finances. She prayed for a mandatory injunction requiring Husband to immediately place Wife's name on the parties' business and personal accounts, to pay Wife her salary, and to return Wife to her duties in the parties' business. Wife further asserted that Husband had forwarded her mail to an unknown location, and demanded its immediate return. Wife also filed a motion for *pendente lite* alimony, attorney's fees, and costs. The trial court granted Wife injunctive relief by order entered February 12, and the parties' entered a consent order on Wife's request for injunctive relief on May 3, 2010.

Husband answered Wife's counter-complaint in August 2010, admitting that the parties' business, Complete Dental Care Clinics, PLC, was a marital asset, admitting that Wife worked in the business, and denying that she was the manager/administrator of the business. Husband admitted that he had removed Wife's name from certain accounts, but denied any improper purpose. He did not deny allegations of inappropriate marital conduct, but asserted that Wife was guilty of "like acts" and that her conduct constituted condonation.

August 2010 mediation was unsuccessful, and the subsequent proceedings in the trial court were torturous, prolonged, and highly acrimonious. Numerous hearings were held by the trial court from November 2010 through January 2012. In April 2011, Husband filed for bankruptcy and the Bankruptcy Trustee's September 2011 motion to intervene in the matter was granted in November 2011.

---

[1](...continued)
or relied on for any reason in any unrelated case.

The trial court entered a final decree of absolute divorce January 20, 2012, made the order *nunc pro tunc* to its September 23, 2011 letter ruling, and incorporated findings made in the September 2011 letter ruling into the decree. The trial court awarded Wife an absolute divorce on the ground of inappropriate marital conduct and dismissed Husband's complaint. The trial court awarded the parties' business to Husband. It divided the parties' remaining personal and financial property, including eight real properties; several automobiles, ATVs, boats and trailers; several bank and investment accounts; a health medical savings account; accounts receivable anticipated from Husband's personal injury claim and a down-payment made on real property in Florida; their personal property and home furnishings; and debts. The trial court found that Husband had dissipated marital assets in the amount of $6,000; and that Wife had not dissipated any assets. Wife was awarded transitional alimony in the amount of $9,900 per month for twelve months beginning November 1, 2011; alimony *in futuro* in the amount of $5,700 per month thereafter until age 66; and ordered Husband to maintain a life insurance policy in the amount of $500,000. With respect to attorney's fees, the trial court stated: "Upon submitting an affidavit of attorney's fees by Wife's counsel, this Honorable Court will consider a judicial lien in Wife's favor or an additional award of marital assets in Wife's favor to defray Wife's attorney's fees" and reserved the matter. Husband and Wife each filed multiple motions to alter or amend, which the trial court heard in January 2012. The trial court partially granted and partially denied the parties' motions in March 2012. By letter ruling entered February 21, 2012, the trial court found Husband to be in contempt for failing to pay alimony as ordered and ordered Husband to pay amounts due by March 2, 2012. By order entered March 9, 2012, the trial court amended its order with respect to alimony, reducing the award of transitional alimony to $7,000 per month for twelve months beginning March 1, 2012, and setting alimony *in futuro* at $5,700 per month thereafter. It ordered the parties to pay their own attorney's fees with respect to the motions to alter or amend. Following a hearing on March 2, 2012, the trial court held Husband in contempt for failing to pay alimony as ordered and ordered him to pay amounts ordered by March 9, 2012, or report to jail. By order entered March 27, the trial court denied Husband's motions to stay enforcement of the judgment and for further proceedings on the issue of contempt. In March 2013, the trial court ordered Husband to pay Wife's attorney's fees in the amount of $75,000 as alimony *in solido*. The trial court also found Husband in contempt for failing to pay to Wife a one-half share of the parties' health savings account. The trial court ordered Husband to pay Wife $3,115 for her share of the account, and further ordered Husband to pay to Wife $500 for attorney's fees incurred on the issue. This appeal ensued.

### Issues Presented

Husband presents the following issues for our review, as stated by him:

I.  The trial court erred by awarding transitional alimony, alimony *in futuro*, and alimony *in solido*.

II.  The trial court erred by making an inequitable division of the marital estate.

III.  The trial court erred by holding Husband in contempt regarding payment of

Wife's share of a health savings account.

Wife, on the other hand, asserts the trial court erred by awarding her too little alimony *in futuro*. She also prays for attorney's fees on appeal.

### *Standard of Review*

Appellate review of the factual findings of a trial court sitting without a jury is *de novo* upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *e.g., Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). Insofar as the trial court's factual findings are based upon its assessment of the weight and credibility of live testimony, we afford considerable deference to the trial court. Because the trial court is in the best position to assess the demeanor of witnesses and "other indicators of credibility," we will not reverse a trial court's determination of credibility absent clear and convincing evidence to the contrary. *Id*. Appellate review of a trial court's conclusions of law, however, is *de novo* with no presumption of correctness. *E.g., Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).

### *Discussion*

We begin our discussion of the issues presented on appeal by noting that the onerous litigation of this matter spanned many months, included several petitions for contempt by both parties, and generated a voluminous record. In its September 2011 letter ruling, the trial court noted that, at that juncture, the proof had included more than ninety exhibits, ten witnesses, and nine evidentiary depositions. We additionally note that the trial court made detailed findings of fact in its many orders, and that its orders reflect careful consideration of the statutory factors relevant to the issues presented for our review. It is abundantly clear in several of the trial court's many orders in this case that the trial court found Husband to be the architect of the demise of the parties' marriage and financial circumstances, and that it found him to be not credible with respect to his financial situation, his ability to work and operate the dental business, and with respect to his earning capacity.

We additionally note that Wife does not deny that she inappropriately kissed anther man prior to the filing of Husband's complaint, and Husband does not deny that he had sexual relationships with approximately 26 women during the course of the parties' marriage. It is undisputed that Husband had extra-marital affairs with the parties' friends and employees, and engaged in unprotected sex with prostitutes. Additionally, as the trial court observed, the parties undisputedly "enjoyed a large income and lived extravagantly[,]" traveled extensively, and owned considerable real and personal property. It also is undisputed that, although Wife has a degree in education, she did not use her degree but managed Husband's dental practice/business and drew a salary of approximately $50,000 - $70,000 per year prior to this action. It also is not disputed that Husband's income approached $1 million per year prior to the commencement of this action; that he was first diagnosed with a tremor in the late 1990's; that, during the pendency of this matter, Husband

received a lump sum in the amount of approximately $180,000 from his disability insurer and began receiving untaxable disability benefits in the amount of $9,300 per month; and that he continues to work in the dental business at least four days per week but does not draw any salary. The trial court also found that Husband was living with his girlfriend in February 2012; that Husband and his girlfriend had traveled together; that he paid his stepfather $53,000 in October 2011 to facilitate the purchase of a residence valued at $265,000, which Husband leased with an option to buy; that Husband received benefits from the dental business including a BMW paid for by the business; that Husband had transferred $10,000 to his brother and $25,000 to his stepfather for his own benefit; and that Husband spent considerable discretionary funds, including $3,500 on dogs.

### *Equitable Distribution of the Marital Estate*

We turn first to Husband's assertion that the trial court did not divide the parties' marital property equitably. After the trial court has determined what property is considered to be part of the marital estate, it must divide the assets of the marital estate equitably. Tenn. Code Ann. § 36–4–121. The equitable division of marital property does not necessarily require that each party take equal shares of the marital estate, but requires a fair result. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). We give great weight to the trial court's division of marital property and we "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen–Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App.1996)).

Tennessee Code Annotated section 36–4–121(c) provides a list of relevant factors that the trial court must consider in making an equitable division of marital property.[2] After the trial court

---

[2]The statutory factors include:

    (1) The duration of the marriage
    (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
    (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
    (4) The relative ability of each party for future acquisitions of capital assets and income;
    (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled its role;
    (6) The value of the separate property of each party;
    (7) The estate of each party at the time of the marriage;
    (8) The economic circumstances of each party at the time the division of property is

(continued...)

considers all relevant factors, it "is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). The trial court should weigh and consider the most relevant factors in light of the unique facts of the case. *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn Ct. App. 2003). With regard to issues of credibility and the weight of testimony, we afford considerable deference to the trial court's findings. *Keyt*, 244 S.W.3d at 327.

As noted above, it is undisputed that the parties built a considerable dental practice/business and achieved a high standard of living during the course of their marriage. It also is undisputed that Wife worked while Husband attended dental school early in the parties' marriage, and that she worked in an administrative/managerial capacity in the parties' business thereafter, drawing as salary a fraction of Husband's business income. We note that the trial court clearly considered the statutory factors in making its determination and that the record includes a spread sheet itemizing the parties' property and values. The trial court found the parties' property to be valued at $11,339,096; debt to be approximately $6,969,182; and equity to be approximately $4,467,000. The trial court awarded wife property valued at approximately $2.5 million and Husband property valued at approximately $1.5 million. The trial court ordered that each party would assume any debt associated with the property awarded to him/her, and awarded Husband the parties' dental business. The dental business does not appear to have been valued definitively by the trial court, but was valued by Husband at $869,000 and by Wife at $1.6 million. Upon review of the parties' tax records contained in the record, it is clear that the parties' "business income" generated the greatest proportion of their combined income. Notwithstanding Husband's bankruptcy petition and his apparent volunteer status at the business, the business remains operational.

As noted above, the trial court determined that Husband had dissipated approximately $6,000 in marital assets. We also note that the trial court found that Husband admitted to spending martial funds during the course of the marriage to purchase sexual favors, and that he had pursued relationships with employees and "others" in addition to spending marital funds on prostitutes. The trial court found that, notwithstanding Husband's medical conditions, the evidence demonstrated that his condition had not "inhibited his ability to work and earn a substantial income . . . should he [choose] to do so." The trial court further found that even if Wife could find employment managing a dental practice, she would not be able to "even approach" Husband's ability to earn income. Additionally, in its February 2012 order denying Husband's petition for contempt, the trial court

---

[2](...continued)
to become effective;

      (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

      (10) The amount of social security benefits available to each spouse; and

      (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36–4–121(c).

found that Wife had "exhausted her available funds" to preserve marital assets, that she was required to retain bankruptcy counsel as a result of Husband's bankruptcy filings, and that Husband "took no steps to assist Wife in preserving assets or providing her funds to pay jointly incurred debts." Upon review of the record, we find no abuse of discretion on the part of the trial court and affirm its division of marital property.

### Transitional Alimony and Alimony in Futuro

We next turn to Husband's assertion that the trial court erred by awarding Wife too great an award of alimony, and to Wife's assertion that the award was too little. A trial court has wide latitude when making an award of alimony. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). An alimony award depends on the circumstances of each case, with financial need of the recipient spouse and the obligor spouse's ability to pay being the primary considerations. *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of alimony to be awarded, the trial court must balance several statutory factors, including those enumerated in section 36–5–121 of the Tennessee Code.[3] Although there is a preference for rehabilitative alimony,

---

[3]Section 36-5-121(i) provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion,

(continued...)

-7-

the type and amount of an alimony award remain largely within the discretion of the trial court. *Id.* at 470. On appeal, we will not alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

Notwithstanding Husband's apparent disability, we note that the success of Husband's business appears to be based on his success as a dental entrepreneur and not entirely on his ability to practice dental surgery. The parties employed more than 40 employees at three locations, and Husband continues to operate the practice. The trial court found Husband's income capacity to be $13,633 per month. Upon review of the record, we cannot say the evidence preponderates against this finding. We discern no abuse of discretion on the part of the trial court and accordingly affirm the awards of transitional alimony and alimony *in futuro*.

### Attorney's Fees as Alimony in Solido

The decision to award attorney's fees as an award of alimony *in solido* lies within the discretion of the trial court, and we will not reverse the award absent an abuse of discretion. *E.g., Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). As noted above, this litigation has been protracted and bitter and made more complex by Husband's multiple petitions for contempt, which the trial court found to be unfounded; Wife's petitions for contempt, many of which the trial court granted; Husband's acts to hinder Wife's access to the parties' assets; issues arising from Husband's bankruptcy proceedings, filed during the pendency of the matter; and issues arising from Husband's long-diagnosed medical condition, which allegedly declined rapidly during the pendency of this mater. We note that of the nine evidentiary depositions considered by the trial court matter, four were depositions of Husband's medical care providers; three were witnesses concerning his many extra-marital sexual relationships; one was the parties' banker; and one was a three-volume deposition of the parties' accountant. We observe, moreover, that the trial court found Husband to be not credible throughout this litigation, at time using quite colorful descriptions of Husband's lack of credibility. We also observed that the trial court reserved the question of attorney's fees pending resolution of the issues of property division and alimony, and that the trial court modified its orders on those issues in light of Husband's bankruptcy proceedings. Attorney's fees were not definitively awarded to Wife until March 2013. Upon review of the entire record, we discern no abuse of discretion on the part of the trial court and affirm the award of attorney's fees as alimony *in solido*.

### Contempt

We finally turn to Husband's assertion that the trial court erred by holding him in civil contempt for failing to pay Wife one-half of the parties' health savings account as ordered. It is not disputed that Husband did not tender one-half of the health savings account to Wife. Husband's

---

[3](...continued)
deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

argument, as we understand it, is that the amount due to Wife from the health savings account was paid to the bankruptcy trustee to offset amounts due from Wife. Husband asserts that the trial court erred where it based its finding on the fact that he did not pay one-half of the account to the bankruptcy trustee where Wife received a credit in an amount equal to her interest in the account against amounts owed to the trustee. Husband asserts that actual receipt of the funds from the health savings account is not the issue where Wife received a credit in an equal amount.

Wife, on the other hand, asserts she never received such a credit. Wife asserts that she offered to offset the amount she owed in bankruptcy in part through the amount she was to have received from the health savings account, but that the bankruptcy trustee's affidavit reflects that the trustee told Wife's attorney that she did not have the funds from the account and that the proceeds from the liquidation of the account were delivered by Husband to his bankruptcy attorney.

Claims for civil contempt founded on a violation of a court order have four essential elements: (1) "the order alleged to have been violated must be 'lawful,'" (2) "the order alleged to have been violated must be clear, specific and unambiguous," (3) "the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order," and (4) "the person's violation of the order must be 'willful.'" *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008) (footnotes omitted). "After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt." *Id*. at 358 (citation omitted). A trial court's decision whether to hold a person in civil contempt is "entitled to great weight" on appeal. *Id*. (citation omitted). "Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review." *Id*. (citations omitted).

In the affidavit of the bankruptcy trustee contained in the record, the trustee stated that, in reference to the trustee's demand that Wife pay $40,000 to Husband's bankruptcy estate, in May 2012 Wife offered to pay $33,856, basing the lower amount partially on a deduction for one-half of the health savings account. The trustee stated that Wife delivered funds in the amount of $33,856 on July 7, 2012. She further stated that she had never received proceeds from the liquidated health savings account; that the proceeds were delivered to Husband's attorney; and that, to the best of the trustee's knowledge, the check from the account payable to Husband was not negotiated. The record contains a copy of the check in the amount of $6,277.24, payable to Husband. Husband references no evidence in the record to indicate that Wife in fact received a credit in an amount equal to her share of the health savings account. We find no abuse of discretion on the part of the trial court and affirm on this issue.

### *Attorney's Fees on Appeal*

The decision to award attorney's fees incurred on appeal is within the sole discretion of this Court. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). When determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney's fees, that party's success on appeal, whether that party has acted in

good faith, and whether an award of attorney's fees is equitable. *Id*. In light of the entirety of the record, including the proceedings in this Court, Wife's request for attorney's fees on appeal is granted.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. Costs on appeal are taxed to the Appellant, Mark Edward Holifield, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment, the collection of costs, and determination of the amount of attorney's fees to be awarded on appeal.

_____
DAVID R. FARMER, JUDGE