IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2019 Session

## TALAT PARVEEN, ET AL. v. ACG SOUTH INSURANCE AGENCY, LLC, ET AL.

**Appeal from the Circuit Court for Washington County**
**No. 36261     J. Eddie Lauderback, Judge**

_____

### No. E2018-01759-COA-R3-CV

_____

This appeal arises from an action commenced by two insured parties against their insurance agent and the insurance agency where he was employed after the insureds' insurance carrier refused to provide excess uninsured motorist coverage because it was not included in the insureds' policy. The insureds alleged that their insurance agent failed to procure the requested insurance on their behalf and that they consequently had suffered monetary losses. The Trial Court applied a statutory rebuttable presumption that the insureds had accepted the provided coverage by paying their insurance premiums, pursuant to Tennessee Code Annotated § 56-7-135(b). Upon its finding that the insureds had not rebutted that presumption, the Trial Court dismissed the insureds' action. The insureds have appealed. Upon our determination that Tennessee Code Annotated § 56-7-135(b) does not apply to actions against an insurance agent for failure to procure insurance coverage as directed, we reverse the Trial Court's grant of summary judgment and remand for the action to proceed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

F. Braxton Terry, Morristown, Tennessee, and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellants, Khurshid Shaukat and Talat Parveen.

Charles W. Cook, III, and Rocklan W. King, III, Nashville, Tennessee, for the appellees, Jeffrey Norris and ACG South Insurance Agency, LLC.

## OPINION

## Background

Upon relocation from Georgia to Tennessee, Talat Parveen and Khurshid Shaukat (collectively, "Plaintiffs") contacted Jeffrey Norris, an agent of ACG South Insurance Agency, LLC ("ACG"), to obtain a personal umbrella insurance policy. Mr. Norris was authorized to write insurance policies for several insurance carriers. Mr. Shaukat attended a meeting with Mr. Norris in 2013. According to Mr. Shaukat, he provided Mr. Norris with a copy of the couple's existing umbrella insurance policy with State Farm ("State Farm Policy") and requested the same coverage in a new policy in Tennessee. Although Mr. Norris denied ever seeing the State Farm Policy, he could not recall the exact conversation he had with Mr. Shaukat. The State Farm Policy, in effect from 2009 to 2013, had $2,000,000 excess uninsured motorist coverage. The State Farm Policy included a separate "line item premium" for the excess uninsured motorist coverage.

Mr. Norris assisted Plaintiffs with obtaining a new umbrella insurance policy in Tennessee through Safeco Insurance Company of America ("Safeco"). The new umbrella insurance policy through Safeco ("Safeco Policy") had a cheaper premium than the State Farm Policy. The Safeco Policy was in effect from March 2013 through March 2014 and included no excess uninsured motorist coverage. Plaintiffs received a copy of the policy and were not charged for excess uninsured motorist coverage. The policy was renewed from March 2014 through March 2015, and again from March 2015 through March 2016. In February 2015, Plaintiffs received a letter from Safeco informing them that the renewed policy would be in effect from March 2015 through March 2016. Neither renewed policy included excess uninsured motorist coverage. Plaintiffs received a copy of their policy and declarations pages. The parties do not dispute that the Safeco Policy as written did not include excess uninsured motorist coverage. Plaintiffs paid their premiums for each policy period and had not inquired why the Safeco Policy was cheaper than the State Farm Policy.

An automobile accident occurred on November 10, 2015, in which Dr. Parveen was injured and her vehicle was a total loss. The vehicle that struck Plaintiff's vehicle belonged to a wrecker service company. Mr. Shaukat subsequently learned from Mr. Norris that their Safeco Policy did not have excess uninsured motorist coverage. Thereafter, Plaintiffs filed a lawsuit against the towing company who owned the wrecker vehicle, seeking damages from the towing company.[1] Plaintiffs further served a copy of

---

[1] The wrecker service company and Plaintiffs ultimately reached a settlement agreement in that proceeding.

the complaint on "Safeco Insurance Company" pursuant to Tennessee Code Annotated § 56-7-1201. Safeco subsequently filed an answer and a motion for summary judgment stating that the Safeco Policy did not include excess uninsured motorist coverage. The Trial Court in that action granted summary judgment in favor of Safeco, ruling that the Safeco Policy did not include coverage for excess uninsured motorist coverage until January 4, 2016, nearly two months after the accident.

In December 2016, Plaintiffs filed this action against Mr. Norris and ACG (collectively, "Defendants"), seeking damages for Mr. Norris's failure to procure excess uninsured motorist coverage on behalf of and as directed by Plaintiffs when assisting them to obtain the Safeco Policy.[2] The parties conducted discovery. Subsequently, Defendants filed a motion seeking summary judgment in May 2018. In their motion, Defendants argue that the action should be dismissed because Plaintiffs could not overcome the statutory presumption created by Tennessee Code Annotated § 56-7-135(b) that the Plaintiffs accepted the coverage provided in the contract upon payment of the insurance premiums. In addition to their motion, Defendants filed a memorandum of law in support of their motion and a statement of undisputed facts. They also included documentation from the previous action involving Plaintiffs, the wrecker company, and Safeco.

In support of their motion for summary judgment, Defendants also provided a declaration by Bill Burke, a representative of Safeco, and the relevant Safeco Policy documents and letters. According to Mr. Burke, it was the business practice of Safeco to mail copies of declaration pages, correspondence, and policy documents to policyholders. Mr. Burke declared that Plaintiffs timely paid their premiums at all times while the policy was in effect through the accident in November 2015. Per Safeco's standard policy, Mr. Burke stated that a letter regarding renewal of the policy would have been sent to Plaintiffs in February 2015 and a copy of the declarations page and insurance agreement would have been mailed to Plaintiffs in March 2015.

Additionally, Defendants included excerpts from a deposition with Mr. Shaukat. During his deposition, Mr. Shaukat explained that he made an appointment with Mr. Norris to obtain a new umbrella insurance policy in Tennessee. Mr. Shaukat emphasized that he had explained to Mr. Norris during their initial 2013 meeting that his intent to procure the umbrella policy was mainly to have uninsured motorist coverage. Mr. Shaukat testified that he did not read the Safeco Policy or declarations after he received them in the mail. Mr. Shaukat acknowledged receiving a letter dated February 2015 from Safeco regarding notice of renewal for the Safeco Policy and a copy of the declarations

---

[2] Plaintiffs also named American Automobile Association, Inc., as a defendant in this action but later voluntarily dismissed it as a party.

page. According to Mr. Shaukat, he did not review the declarations document and paid the premium for the policy. During his deposition, Mr. Shaukat acknowledged that the March 2015 policy declaration page did not identify excess uninsured motorist coverage.

Mr. Shaukat testified during the deposition that he visited Mr. Norris in January 2016 following the accident in order to obtain a copy of his insurance policy. According to Mr. Shaukat, Mr. Norris informed him that his umbrella policy did not include excess uninsured motorist coverage and that he had not paid for such coverage. At that time, Mr. Shaukat instructed Mr. Norris to add the uninsured motorist coverage to his plan, and he would pay for it. The coverage was added as of January 4, 2016, but Mr. Norris informed Mr. Shaukat that the coverage was not retroactive.

Defendants also included excerpts of a deposition of Dr. Talat Parveen. In her deposition, Dr. Parveen testified that she was not present for the meeting with Mr. Norris in 2013 but that she and her husband discussed the insurance policy. She further testified that she asked Mr. Shaukat whether the policy included uninsured motorist coverage, and he had replied, "yes." Dr. Parveen stated that she relied on her husband to take care of the insurance policies. According to Dr. Parveen, she had never seen the Safeco Policy.

Plaintiffs filed a response to the summary judgment motion asserting that a genuine issue of material fact existed and requested that summary judgment be denied. Plaintiffs included with their motion a memorandum of law, a response to Defendants' statement of undisputed facts, and their own statement of additional material facts. In support of their response, Plaintiffs included excerpts from the deposition testimony of Mr. Shaukat and Mr. Norris, as well as a declaration by Mr. Shaukat. In the declaration, Mr. Shaukat stated that he had sought the assistance of a trained insurance agent because although Plaintiffs had a general understanding of insurance, they needed the assistance of a trained insurance professional to ensure that Plaintiffs obtained the coverage they desired. Mr. Shaukat stated that he "always relied" upon the assistance of trained insurance agents to procure insurance coverage for him. Mr. Shaukat explained that when he met with Mr. Norris in 2013, he provided Mr. Norris with a copy of his State Farm Policy and specifically told him that Plaintiffs desired "the exact same coverage that appeared in that existing policy," including excess uninsured motorist coverage. According to Mr. Shaukat, Mr. Norris promised him that he would obtain the same coverage in the new umbrella policy as they had in the State Farm Policy. Mr. Shaukat stated that he relied on the statements made by Mr. Norris.

Both Plaintiffs and Defendants filed portions of Mr. Norris's deposition. In his deposition, Mr. Norris stated that he and Mr. Shaukat had discussed an umbrella policy but that they had not discussed uninsured motorist coverage. Mr. Norris testified he did not keep notes regarding his meeting with Mr. Shaukat. According to Mr. Norris, he normally explained to clients that uninsured motorist coverage was available for an

additional premium but he does not recall the exact conversation he had with Mr. Shaukat. Mr. Norris testified that he never saw the State Farm Policy and denied that Mr. Shaukat provided a copy of the policy to him. Mr. Norris stated that if he had seen excess uninsured motorist coverage on the previous umbrella policy, his standard practice would have been to inquire whether Mr. Shaukat desired to obtain the same coverage.

Following oral arguments concerning the summary judgment motion, Plaintiffs' response, and Defendants' reply brief, the Trial Court entered its "Final Judgment of Dismissal" and memorandum opinion in August 2018. The Trial Court found that it was undisputed that Plaintiffs had paid their premiums for the policies in effect during 2013 through 2014 and 2014 through 2015. The Trial Court's memorandum opinion reflected that Plaintiffs received a letter in February 2015 advising them of their renewed policy, which would span March 2015 through March 2016. The Trial Court further found that Plaintiffs had received their policy and declarations pages reflecting the contents of the policy and that those pages displayed no excess uninsured motorist coverage. According to the Trial Court, Tennessee Code Annotated § 56-7-135(b) created a rebuttable presumption that Plaintiffs had accepted the coverage provided in the policy by paying their insurance premiums for each policy period. Upon the Trial Court's determination that Plaintiffs had presented no evidence to rebut that presumption, the Trial Court granted summary judgment in favor of Defendants. Plaintiffs timely appealed.

## Discussion

Although not stated exactly as such, Plaintiffs raise the following issue for our review: Whether the Trial Court erred by finding that Tennessee Code Annotated § 56-7-135 applies to create a rebuttable presumption in actions against an insurance agent for failure to procure a policy in accordance with the client's instructions.

This issue requires us to construe Tennessee Code Annotated § 56-7-135. As our Supreme Court has instructed:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness. *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other

sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 693 (Tenn. 2018). Our Supreme Court further explained regarding ambiguity:

The purpose of any finding on ambiguity is simply to anchor the ultimate interpretation of the statute to its text. It is intended as an aid to reasoned statutory interpretation, not an impediment. Any initial perception on whether a statute appears ambiguous should not be used in a mechanistic manner that disregards essential interpretive information.

In determining whether statutory language is ambiguous, courts are not to put on blinders to *all* considerations outside the specific text in question. In all cases involving statutory construction, judges must look not only at "the language of the statute," but also "its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires* [v. Simpson], 539 S.W.3d [134,] 143 [(Tenn. 2017)] (quoting [State v.] *Collins*, 166 S.W.3d [721,] 726 [(Tenn. 2005)]) (citation omitted) (internal quotation marks omitted). Furthermore, statutes should not be interpreted in isolation. The overall statutory framework must be considered, and "[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both." *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). Depending on the circumstances of a given case, consideration of the statute's purpose, its evolution over the course of time, and a longstanding interpretation by the affected parties may be needed to properly evaluate whether a proffered alternate interpretation is "a nonsensical or clearly erroneous interpretation of a statute." *Powers v. State*, 343 S.W.3d 36, 50 n.19 (Tenn. 2011) (discussing ambiguity).

*Coffee Cty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 845-46 (Tenn. 2019).

The statute at issue in this appeal, Tennessee Code Annotated § 56-7-135 (2016), states as follows:

(a) The signature of an applicant for or party to an insurance contract on an application, amendment, or other document stating the type, amount, or terms and conditions of coverage, shall create a rebuttable presumption that the statements provided by the person bind all insureds under the contract and that the person signing such document has read, understands, and accepts the contents of such document.

(b) The payment of premium for an insurance contract, or amendment thereto, by an insured shall create a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract.

The portion of the statute at issue in this case is subsection (b). The Trial Court found that because Plaintiffs had paid their insurance premiums on the Safeco Policy, a rebuttable presumption was created that they had accepted the coverage provisions in the contract. The question before us is whether Tennessee Code Annotated § 56-7-135(b) applies to an action against not only the insurance company but also an action against an insurance agent for failure to procure the requested coverage as directed by the insured parties. If the answer to this question is "yes," the Trial Court did not err. If the answer is "no," the summary judgment must be reversed.

On appeal, Plaintiffs argue that the rebuttable presumption established by Tennessee Code Annotated § 56-7-135 applies only to cases involving the insurer but not to actions against an insurance agent for failing to procure insurance coverage consistent with the insured's direct specifications. According to Plaintiffs, Tennessee Code Annotated § 56-7-135 was enacted in response to our Supreme Court's ruling in *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508 (Tenn. 2012). In *Allstate Ins. Co.*, an automobile insurer filed an action seeking declaratory judgment that an insured van was covered by the party's personal policy and not the commercial policy. *Id.* at 510. The insurer's agent in *Allstate Ins. Co.* had transferred the insured van that had been involved in an automobile accident from the commercial policy to the personal policy without instruction to do so by the policyholder. *Id.* The Tennessee Supreme Court held that the insured had not ratified the agent's mistake by making premium payments on the personal policy that included the insured vehicle and that the insurer was estopped from denying coverage under the commercial policy regarding the accident. *Id.* at 510.

The Supreme Court's opinion in the *Allstate* case was released on March 26, 2012. Our General Assembly subsequently enacted Tennessee Code Annotated § 56-7-135 on May 10, 2012, less than two months later. Plaintiffs argue that because *Allstate Ins. Co.* concerned only an action between an insurer and the policyholder and because statutes that change or abrogate common law must be narrowly construed, this Court should conclude that the subsequently enacted statute applies only to actions directly against insurers.

- 7 -

Defendants, however, argue that Tennessee Code Annotated § 56-7-135 also could have been enacted in response to the Supreme Court's opinion in *Morrison v. Allen*, 338 S.W.3d 417 (Tenn. 2011), wherein the plaintiff had been awarded damages in part due to the agents' failure to procure a life insurance policy as directed. The Supreme Court's opinion in *Morrison* was released in February 2011. According to Defendants, Tennessee Code Annotated § 56-7-135 is unambiguous and *Harris v. Nationwide Mut. Fire Ins. Co.*, 92 F.Supp.3d 736 (M.D. Tenn. 2015), *aff'd*, 832 F.3d 593 (6th Cir. 2016),[3] supports their contention that the rebuttable presumption applies to actions against the insurance agent for failure to procure the policy as directly instructed by the insured.

To date, the only case citing to the enacted statute is the federal district court's opinion in *Harris*. *See* 92 F.Supp.3d 736. In *Harris*, the district court analyzed the application of Tennessee Code Annotated § 56-7-135 with regard to an action brought by a policyholder against an insurer and the insurance broker. *Id.* at 746-47. The insurance policy in *Harris* did not contain "contents flood coverage" that the policyholders allegedly had requested. *Id.* at 738. Although the action was filed prior to enactment of Tennessee Code Annotated § 56-7-135, the court held that the statute applied because it was procedural in nature and retroactive. *Id.* at 746-47. Applying Tennessee Code Annotated § 56-7-135, the district court in *Harris* recognized that it was an undisputed fact that the policyholder had paid the insurance premiums for at least three years prior to the flooding at issue. *Id.* at 747. As such, the district court concluded that a rebuttable presumption existed pursuant to statute that the policyholders "had accepted the terms of their flood policy and its declaration pages, including the lack of contents coverage." *Id.* The court further determined that the statutory presumption had not been rebutted. *Id.*

In a footnote in *Harris*, the district court recognized that no Tennessee appellate court had "addressed the interaction of T.C.A. § 56-7-135 with the Tennessee Supreme Court's holding in *Allstate Insurance Co. v. Tarrant,* 363 S.W.3d 508, 521 (2012)." *Harris*, 92 F.Supp.3d at 747 n.3. We note that the *Harris* opinion is a federal district court decision and is not binding on this Court. *See State v. Frazier*, 558 S.W.3d 145, 156 (Tenn. 2018) (determining two district court opinions to be only persuasive authority). Furthermore, it does not appear that the plaintiff in *Harris* challenged the statute's applicability to claims specifically against the insurance agent due to his or her

---

[3] The Sixth Circuit Court of Appeals affirmed, in part, the district court in *Harris* due to the plaintiffs' failure to contest in their appellate brief the district court's partial grant of summary judgment in favor of the insurance broker. *Harris v. Nationwide Mut. Fire Ins. Co.*, 832 F.3d 593, 595 n.1 (6th Cir. 2016). The Court, therefore, deemed any argument by the plaintiffs concerning the partial grant of summary judgment in favor of the insurance broker to be abandoned. *Id.*

failure to procure the requested insurance coverage, only whether the statute was retroactive.

We therefore proceed to construe Tennessee Code Annotated § 56-7-135(b) as to whether it applies to actions against an insurance agent for failure to procure the insurance coverage on the insured's behalf as directed. In our analysis, we must look at subsection (b) in the context of the entire statute. *See Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). Moreover, when construing the meaning of a statute, "'[e]very word used is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature.'" *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 48, 424 S.W.2d 193, 196 (1968)). We further note that "'[a] cause of action for failure to procure insurance is separate and distinct from any cause of action against an insurer or a proposed insurer; in a failure to procure claim, 'the agent, rather than [the] insurance company, is independently liable.'" *Morrison*, 338 S.W.3d at 426 (quoting 43 Am.Jur.2d *Insurance* § 163 (2003) (other internal citations omitted)).

Upon a review of the statute at issue, we determine that Tennessee Code Annotated § 56-7-135(b) is unambiguous. The plain and unambiguous language contained in Tennessee Code Annotated § 56-7-135(b) creates a rebuttable presumption that a party has accepted the coverage provided in the policy upon payment of an insurance premium by the insured parties "under the contract." In analyzing the statutory subsection at issue, our General Assembly included the phrase "under the contract" and that phrase must be given full effect. In looking at the statute as a whole, subsection (a) also includes language related to the insurance contract.

Construing the statute at issue and giving effect to each word of the statute, we determine that by including language regarding the insurance contract, our General Assembly intended to restrict the application of the statute to actions between the parties to the insurance contract. As such, we conclude that the rebuttable presumption in Tennessee Code Annotated § 56-7-135(b) applies only to actions between the parties to an insurance contract, which includes the insurance carrier and the insured parties. The insurance agent obtaining the insurance policy for the insured is not a party to the insurance contract. Therefore, the rebuttable presumption created by Tennessee Code Annotated § 56-7-135 does not apply to actions brought against an insurance agent who failed to procure the insurance coverage as directed by the insured. Because Tennessee Code Annotated § 56-7-135 is not applicable to actions directly against insurance agents, we determine that the Trial Court erred by applying the rebuttable presumption in this action and reverse the Trial Court's summary judgment.

## Conclusion

The judgment of the Trial Court is reversed.  This cause is remanded to the Trial Court to allow Plaintiffs to proceed with their action and for collection of costs assessed below.  The costs incurred on appeal are assessed against the appellees, Jeffrey Norris and ACG South Insurance Agency, LLC, and their surety, if any.

_____

D.   MICHAEL   SWINEY,   CHIEF JUDGE