IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 2, 2022

## MAYCEE J. STINE v. ISAIAH M. JAKES ET AL.

**Appeal from the Juvenile Court for Williamson County**
**No. 36219-2017-VIS-26     Sharon Guffee, Judge**

——————————————————————

### No. M2021-00800-COA-R3-JV

——————————————————————

This appeal arises from Appellant/Mother's January 2020 petition to modify the visitation provisions in an agreed parenting plan entered by the juvenile court in December 2017. Following proceedings before a juvenile court magistrate, Mother filed a timely request for a *de novo* hearing by the judge pursuant to Tennessee Code Annotated section 37-1-107(d). In lieu of an evidentiary hearing, the juvenile court considered the matter on the parties' briefs and argument of counsel. The court determined it could not make factual findings without conducting a *de novo* trial and advised the parties that, in lieu of a hearing, a direct appeal to this Court was "a remedy for either party." Mother did not set a hearing, and the juvenile court affirmed the magistrate's findings of fact and conclusions of law. Mother appeals. We vacate the juvenile court's order and remand this matter for a *de novo* hearing before the juvenile court judge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

William Chase Rudd and Robert J. Turner, Nashville, Tennessee, for the appellant, Maycee Joy Stine.

Gary Jakes, Isaiah Mason Jakes, and Naomi Jakes, Franklin, Tennessee, appellees, pro se.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant Maycee J. Stine ("Mother") and Appellee Isaiah M. Jakes ("Father") are the parents of U.J., a non-marital child born in December 2016. Mother was a minor when U.J. was born; Father serves in the United States Marine Corps and has been stationed outside Tennessee since July 2016. In January 2017, Father filed a "Petition to Establish Paternity, Parenting Plan and Child Support." Father's paternity was established, and Mother was named primary residential parent in an agreed temporary parenting plan. The January 2017 plan provided that Father would have parenting time as agreed by the parties and set Father's child support obligation at $316 per month. A child support worksheet was attached to the order.

On July 13, 2017, Father's parents, Naomi Jakes ("Grandmother") and Gary Jakes ("Grandfather"; collectively, "Grandparents") filed a petition for grandparent visitation rights pursuant to Tennessee Code Annotated section 36-6-306 ("section 36-6-306"). Grandparents named Mother as the only respondent in their petition. Grandparents asserted that Mother had not permitted them to see U.J. since March 2017. They also asserted that, because Father was stationed out of state and unable to exercise parenting time except when on leave, they were unable to visit with U.J. during Father's parenting time. Grandparents prayed for an award of visitation of at least two weekends per month, two weeks during the summer, Christmas visitation, and at least six hours on U.J.'s birthday. On the same day, Father filed a "Motion to enter a permanent parenting plan, for Grandparents to exercise Father's parenting time, and for other relief."[1]

Mother filed a motion to dismiss Grandparents' petition on September 11, 2017. In her motion, Mother asserted Grandparents had failed to state a claim under section 36-6-306. She asserted that the relief sought in Grandparents' petition was for an assignment of visitation rights pursuant to Tennessee Code Annotated section 36-6-308, which requires the parent of a minor child to file a petition to modify and assign rights.[2] She submitted that there was no possible set of facts that would support Grandparents' petition for visitation under section 36-6-306.

The juvenile court heard Father's and Grandparents' July petitions on September 11, 2017, and Mother filed a notice to strike her motion to dismiss on September 12.[3] By order entered September 26, 2017, the juvenile court awarded Father parenting time on

---

[1] It appears that the record transmitted to this Court does not contain Father's July 2017 petition. However, the parties do not dispute that the petition was filed.

[2] We observe that Tennessee Code Annotated section 36-6-308, which related to the temporary assignment of visitation rights during active military service, was repealed by 2014 Tenn. Pub. Acts, ch. 798, § 2, eff. July 1, 2014.

[3] It appears that the juvenile court heard Father's petition and Grandparents' petition at the same hearing.

September 11, 13, 14, and 15 and Facetime on Monday and Wednesday evenings. It additionally awarded Grandparents "parenting time" every other Saturday and every other Sunday on an alternating basis. The juvenile court ordered the parties to participate in mediation, and the parties agree that the court stated at the hearing that Grandparents were going to be awarded visitation rights.[4] However, it is undisputed that the juvenile court did not engage in the analysis prescribed by sections 36-6-306 and 36-6-307 and that Grandparents were not named as intervening parties in Father's petition. Nevertheless, the September 2017 order entered by the juvenile court recited Grandparents and Father as joint petitioners and Mother as respondent. The juvenile court thereafter treated Father's and Grandparents' separate petitions as one action.

Mediation was held on November 16, 2017, and Mother and Father agreed to a permanent parenting plan. It appears that Mother and Grandparents attended the mediation session and that Father participated remotely from Camp Pendleton (California). It also appears that Mother's mother attended as Mother's guardian because Mother remained a minor in November 2017.

The agreed parenting plan was approved and entered by the court as a new parenting plan on December 7, 2017. The agreed plan named Mother as primary residential parent with 285 days of parenting time and provided that Father would receive 80 days of parenting time. It also provided:

> If Father is not present for parenting time on this schedule, then he may delegate his time to his parents on the following schedule: on the first of his weekends, he can delegate his time from Friday at 6:00 p.m. until Sunday at 6:00 p.m.; on his next weekend, he can delegate his time from Sunday at 8:00 a.m. to 1:00 p.m.

The plan established a detailed holiday visitation schedule dividing the holidays between Mother and Father and also providing:

> 1. A holiday shall begin at 6:00 p.m. on the night preceding the holiday and end at 6:00 p.m. the night of the holiday, unless otherwise noted here: (1) for Martin Luther King Day, President's Day, Memorial Day and Labor Day, the Father's parenting time, if he is present for the holiday, shall extend to 6:00 p.m. Monday; (2) July 4 shall run from 9:00 a.m. to 9:00 p.m. on the day of the holiday, if Father is able to exercise this time.

> 2. If Father is not able to exercise his time on Father's Day, Father may

---

[4] In their June 2021 trial memorandum, Grandparents and Father asserted that the trial court stated, "these grandparents are going to get some visits" and "I would like for the grandparents to have at least every other weekend."

delegate his time on Father's Day to his parents from 9:00 a.m. to 5:00 p.m. All other times which Father is unable to exercise shall default to Mother, except as specifically set forth herein.

3. If Father is unable to exercise Thanksgiving, Mother shall have that holiday, except that Father shall have time from noon to 4:00 p.m. on the Tuesday before every Thanksgiving, which he shall be permitted to delegate to his parents.

4. If the Father is unable to exercise his time at Easter, Father may delegate the following time to his parents: Noon to 4:00 p.m. on Easter Day.

The plan provided that Father would have parenting time during the fall and spring vacation times in even years "if he is able to exercise it," that Mother would have the time if Father was unable to exercise it, and that Mother would have fall and spring vacation time in odd years. It awarded both Mother and Father two "nonconsecutive noninterrupted" summer vacation weeks and required Mother "to provide transportation for the child to an airport near Father's posting as long as he [was] posted in the lower 48 states." It also awarded Father an additional week "at a time and place other than summer in California, at his expense." The plan required Father to "give Mother 40 days notice of his chosen non-consecutive weeks each summer."

The plan also set-forth a Christmas vacation schedule alternating between Mother and Father and provided:

Other agreement of the parents: If the Father is unable to exercise time with the child over the Christmas holiday, the father shall be permitted to delegate Christmas Eve to his parents from 10:00 a.m. to 4:00 p.m. in odd years.

Section J of the plan provided, in relevant part:

3. If the Father moves his residence to Tennessee or leaves the military, Father's option to delegate parenting time to his parents shall automatically terminate.
4. In the event Father is deployed, the parties shall each have rights and obligations under the Tennessee Uniform Deployed Parents Custody and Visitation Act (T.C.A. 36-7-101, et. seq), including the right of [F]ather to delegate parenting time to his Parents.
5. Father's parents shall be allowed to transport the child to Father, or wherever he is stationed, for his parenting time, at his parent's cost.
6. Father's parents shall he deemed parties to this Parenting Plan for the purpose of enforcement of parenting schedules and obligations other than child support.

- 4 -

The parenting plan provided that Mother would claim U.J. for federal income tax purposes and required Mother and Father to provide each other with relevant IRS forms. Father was required to maintain health insurance for U.J. and life insurance on his life until his child support obligation terminated. The plan further provided that any disagreements or modification would be submitted to mediation.

However, the December 2017 agreed parenting plan did not recite any child support obligation, and it appears that no child support worksheet was attached to the plan. There is nothing in the record transmitted to this Court to demonstrate that the parties' child support obligations had been established when Mother filed the 2020 petition that gave rise to this appeal.[5] Nevertheless, the juvenile court entered the agreed parenting plan as an order of the court in December 2017.

Father married sometime prior to September 2018, exercised very little parenting time with U.J., and the relationship between Mother and Grandparents deteriorated as Grandparents assumed virtually all the parenting time "delegated" to them by Father. In January 2020, Mother filed a "petition to modify visitation and set child support." In her petition, Mother named Father and Grandparents as respondents. She asserted that a material change of circumstances had occurred that warranted a modification of parenting time, visitation and child support.[6] Mother asserted that Father had not established a relationship with U.J., that he had not contacted him by Facetime since July 2018, and that Father was preparing to deploy to Japan for a tour of a minimum of 36 months. She also asserted that Grandmother had "consistently shown emotional instability" and that visitation with Grandmother caused U.J. to become anxious and fearful. Mother contended that she had regularly consulted with a counselor about U.J.'s behavior and that the counselor and U.J.'s pediatrician had stated that it was not in U.J.'s best interests to continue to visit Grandmother. Mother filed a proposed permanent parenting plan that allocated 44 parenting days to Father. Mother's proposed plan did not contain a provision allowing Father to delegate his visitation time to Grandparents.[7]

On March 7, 2020, Father emailed Mother stating, in relevant part:
I would like to keep my parents out of the court petition, because they will soon not be apart (sic) of the parenting plan, just like your parents aren't apart (sic) of the parenting plan either. This is an obvious issue that needs to be discussed but it should be done so between the parents, not grandparents, since I'm willing to change the way we have been doing things to strictly just

---

[5] In their June 2021 trial memorandum in the juvenile court, Father and Grandparents submitted that no order setting Father's child support obligation was entered until after the final hearing before the magistrate in March 2021.

[6] It appears that Father paid child support in some amount notwithstanding the lack of a child support order.

[7] Mother also filed a petition for criminal contempt that she subsequently voluntarily dismissed.

- 5 -

us and no other entities, I would highly respect the decision to do the same and only contact myself or wife.

In March 2020, the matter was set for a status hearing before the juvenile court magistrate on May 11, 2020. The notice of hearing named only Father as Defendant. On May 1, Father and Grandparents (collectively, "Respondents") filed a motion to stay proceedings because Father had been deployed to Japan and could not be present. Acting through military legal assistance, on May 27, 2020, Father requested a stay of proceedings until June 2021 on the basis of unavailability due to his military service obligations. In her response, Mother acknowledged Father's right of a partial stay pursuant to 50 USC section 3932, but contended that the proceedings that were governed by statute, including child support and a "temporary parenting plan" to reflect the "current factual custody" should go forward.

The magistrate stayed Mother's petition to modify the parenting plan with respect to Father. However, the magistrate bifurcated the matter "[a]s it pertain[ed] to [Grandparents'] parenting time" and set a hearing date of June 18, 2020. On May 20, Mother filed a petition to restrict visitation with Grandparents unless supervised by Father. In her petition, Mother relied on *Smallwood v. Mann*, 205 S.W.3d 358 (Tenn. 2006), in support of her argument that Father could not assign his rights to Grandparents and Grandparents were not entitled to visitation rights absent a finding of the danger of substantial harm if visitation is denied as required by section 36-6-306.[8] Mother attached

---

[8] Tennessee Code Annotated section 36-6-306 provides, in relevant part:

> (b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation or severe reduction of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:
> (A) The child had such a significant existing relationship with the grandparent that loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child;
> (B) The grandparent functioned as a primary caregiver such that cessation or severe reduction of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or
> (C) The child had a significant existing relationship with the grandparent and loss or severe reduction of the relationship presents the danger of other direct and substantial harm to the child.
> (2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:
> (A) The child resided with the grandparent for at least six (6) consecutive months;
> (B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or
> (C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

Father's March 7 email to her petition. She also attached letters from two licensed counselors stating that visitation with Grandmother was not in U.J.'s best interests.

Respondents responded to Mother's petition to restrict visitation with Grandparents on May 28. In their response, Respondents construed Mother's reliance on *Smallwood* as pertaining only to the jurisdiction of the juvenile court to adjudicate grandparent visitation actions under a prior version of section 36-6-306, which was amended after the decision in *Smallwood*. They also asserted that the 2017 parenting plan permitted Father to designate his parenting time to Grandparents pursuant to the Tennessee Uniform Deployed Parents Custody and Visitation Act codified at Tennessee Code Annotated section 36-7-101, et seq. and that, because the matter was stayed as to Father, no changes to the parenting plan should be made. They also relied on Tennessee Code Annotated section 36-7-305 and asserted that Mother's allegations were untrue.[9]

Mother responded to Respondents' response on May 29. In her response, Mother asserted that she did not question the juvenile court's jurisdiction. She also asserted that, because Father was accompanied in Japan by his wife and their child, Father was not deployed as defined by the code, which requires service orders that are "designated as unaccompanied; b) do not authorize dependent travel; c) otherwise do not permit the movement of family members to the location to which the service member is deployed." She also asserted that Respondents acknowledged that the parenting plan could be modified

---

In *Smallwood v. Mann*, the father of a nonmarital child was stationed out of state with the United States Navy. *Smallwood*, 205 S.W.3d 358, 360 (Tenn. 2006). The juvenile court denied the grandparents' claim for visitation pursuant to section 36-6-306, but ruled: "In the event that the father is unable to exercise personal visitation in any given calendar month, the paternal grandparents shall be entitled to exercise the father's shared parenting time the last full weekend of that calendar month commencing in April 2004." *Id*. at 360-61. Our supreme court held that the grandparents could not "obtain visitation by way of an 'assignment' of the father's visitation rights." *Id*. at 365. The *Smallwood* court stated: "Allowing a grandparent to procure visitation without first requiring a showing of harm to the child if such visitation is denied not only violates section 36–6–306(b)(1) which specifically requires such a showing, it also constitutes an infringement on the fundamental rights of parents to raise their children as they see fit." *Id*. at 363 (citation omitted).

[9]Tennessee Code Annotated section 36-7-305 provides:

In a proceeding for a grant of custodial responsibility pursuant to this part, the following rules apply:
(1) A prior judicial order designating custodial responsibility in the event of deployment is binding on the court unless the circumstances meet the requirements of law of this state other than this chapter for modifying a judicial order regarding custodial responsibility; and
(2) The court shall enforce a prior written agreement between the parents for designating custodial responsibility in the event of deployment, including an agreement or modification executed under part 2 of this chapter, unless the court finds that the agreement is contrary to the best interest of the child.

if it was contrary to the child's best interests; that Father had expressed his agreement to modifying the plan; and that the statutes require a showing of substantial harm if visitation with Grandparents ended.

The magistrate heard Mother's petition to restrict Grandparents' visitation on June 4, 2020. The magistrate applied the provisions of Tennessee Code Annotated section 36-6-405, which is applicable to the modification of permanent parenting plans. The magistrate found that there was "not a real hazard or danger posed to the minor child by [Grandmother]" but ordered Grandparents not to use corporal punishment on the child.

The magistrate heard Mother's petition to modify Grandparents' visitation over four days in August 2020. By order entered on August 17, the magistrate determined that a material change in circumstances had occurred and that the parenting plan was not in the best interests of the child. The magistrate found:

> The child has developed a fear of his paternal grandparents and has demonstrated this in comparisons he makes of the paternal grandmother and the Joker and the stories that go along with the comparison. The Court also finds Mother and the maternal grandparents have witnessed and testified that there is a fair amount of stress before, during and after the exchanges with the paternal grandparents. This is also evident from the videos, what the child says and the descriptions thereof.

The magistrate then considered the factors set forth in Tennessee Code Annotated section 36-6-106, which governs child custody determinations, and Tennessee Code Annotated section 36-6-307, which is applicable to a grandparent visitation petition filed pursuant to section 36-6-306, and determined that it was not in the best interests of the child to continue the parenting plan. The court amended the plan to provide:

> The daytime visits shall continue every other Sunday from 8:00 AM until 1:00 PM with the following parameters to apply;
> 1) Only Mother and [Grandmother] will be present for the exchange;
> 2) The exchange shall occur at the parties' houses, unless otherwise agreed by the parties;
> 3) No videos will be taken;
> 4) No police will be present;
> 5) The first hour of visitation, [Mother] is to remain present at the visit;
> 6) During the first hour of visitation, Father shall make every effort to Skype or Facetime during the first hour of visitation.

The magistrate also ordered Grandmother to participate in counseling with Mother, to be paid for by Grandmother.[10] The magistrate denied Mother's oral motion for a directed verdict on the basis that no findings had been made to support Grandparent visitation. The magistrate found that "the parties entered into an agreed parenting plan in mediation whereby Father's parenting time could be delegated to the paternal grandparents by agreement."

Mother filed a motion to vacate the order or, in the alternative for an interlocutory appeal in September 2020. In February 2021, she filed a motion to amend and/or clarify the August 2020 order. Following a hearing via WebEx on February 18, which Father did not attend, the magistrate reserved Mother's September 2020 motion and set the matter for trial on March 9, 2021.

The record contains an excerpt from the March 9, 2021, hearing demonstrating that Father participated in the hearing remotely.[11] Father testified that he had been stationed in multiple locations since joining the Marine Corps, that he was currently stationed in Japan, that he had contracted to remain in Japan for the next two years, and that he did not intend to move back to Tennessee within the next three years. He also testified that he intended to separate from the Marine Corps at some point and that it was "very likely" that he would return to Tennessee. We cannot ascertain from the excerpted portion of the transcript contained in the record whether Father was questioned regarding his preferences with respect to the parenting plan and his option to delegate his parenting time to Grandparents.

On March 12, 2021, the magistrate ruled orally on Mother's petition to modify the parenting plan and set child support. The magistrate stated that it would enter "two separate orders: one on grandparent visitation and the other on the permanent parenting plan between [Mother] and [Father]." The magistrate then engaged in the analysis provided at Tennessee Code Annotated section 36-6-307 with respect to Grandparents' visitation. The magistrate awarded Grandparents visitation every five weeks. The first three visits were

---

[10] Counseling apparently was unsuccessful. The record contains a letter from the licensed counselor who met with Grandmother dated February 12, 2021. The counselor stated that she had met with Grandmother in September 2020 and that, when she broached the topic of corporal punishment of U.J., Grandmother "raised her voice and became very upset and spent the rest of session telling me that I was unprofessional and threatening towards me and then attempting to become charismatic and change my mind. After about forty minutes I terminated session and encouraged [Grandmother] to speak with her attorney." The counselor described Grandmother's behavior as "concerning" and "erratic." She also stated that she had received an email from Grandmother in response to an invoice and that Grandmother responded:

> You violated the court order and then refused to see me. The thirty minutes of my time was merely an act to extort money. I'll add this demand for payment to the pending ethics case I have with the State of Tennessee. I did not receive what was court ordered, then you insulted me and made a mockery of the justice system. Payment seems irrelevant at this point.

[11] It appears the hearing was held via WebEx.

- 9 -

to occur on Sunday from 11:00 AM to 5:00 PM. Beginning June 19, Grandparents' visitation time was set at Friday after daycare until 5:00 PM on Sunday every five weeks. The magistrate excepted Thanksgiving, Christmas, Mother's birthday, and U.J.'s birthday from the schedule. In fashioning this award, the magistrate acknowledged:

> the Court of Appeals would find that the grandparent visitation probably exceeds that which should be granted. The Court of Appeals and the Tennessee Supreme Court have said in several cases that grandparent visitation should not be in the place of a parent's visitation and should be limited in nature.

After ruling orally on Grandparents' visitation, the magistrate utilized the factors set forth in Tennessee Code Annotated section 36-6-106 to consider Mother's petition regarding Father's visitation. The magistrate determined, *inter alia*, that Father had made no effort to develop a relationship with U.J. and that "it appear[ed] he has had no desire to develop a meaningful relationship with the child." When asked by counsel whether the magistrate intended a modified or new parenting plan, the magistrate replied: "Do a new parenting plan order."

By order entered March 22, 2021, the magistrate denied Mother's motion for an interlocutory appeal. The magistrate determined that the 2017 parenting plan was valid and that Father was not a resident of Tennessee or domiciled in Tennessee. In a separate order also entered on March 22, 2021, the magistrate reiterated its determination that a material change in circumstances had occurred. Notwithstanding the absence of a petition for grandparent visitation or any finding in conformance with section 36-6-306, the magistrate analyzed the issue of Grandparents' visitation under the factors set forth in Tennessee Code Annotated section 36-6-307. The magistrate denied Mother's petition to end Grandparents' visitation time and set Grandparent's visitation in accordance with its March 12 oral ruling. The amended visitation schedule awarded Grandparents visitation rights separate and distinct from Father's visitation.

The magistrate entered its order on Mother's petition with respect to Father on April 1, 2021. The magistrate stated that its order was "a modification of the prior agreed order." The court-ordered permanent parenting plan entered by the magistrate recited Mother as plaintiff and Father as Defendant. Mother was named primary residential parent and, notwithstanding its determination that Father had made no attempt to establish a relationship with U.J, the magistrate increased Father's visitation time to the standard 82 days.[12] The March 2021 plan provides:

---

[12] At the March 12, 2021 hearing, the magistrate stated: "I just granted him standard days, which is 82 days, without knowing what --- how much he will exercise."

- 10 -

The Mother shall have responsibility for the care of the child or children except at the following times when the other parent shall have responsibility:

The Mother shall have the minor child at all times except as provided for herein. Father is currently in military service and is stationed in Japan. Father may have up to five (5) consecutive days of parenting time per month with the minor child as long as he maintains his Facetime/Video Call requirement in Section J of this plan. Father shall give Mother at least thirty (30) days notice in writing (by e-mail, text, fax, or other writing) prior to exercising his parenting time.

In the event Father does not comply with Section J, he shall not be allowed overnight parenting time and visits shall occur at Mother's discretion.

Father may exercise his parenting time in a state other than Tennessee but he shall be responsible for transportation costs as provided for herein.

The magistrate set holiday and vacation visitation based on "the regular schedule." However, it provided: "For Grandparents' visitation pertaining to [holidays and vacation], see the Court's separate order." Thus, the magistrate assigned Father's holiday visitation to Grandparents, removed Father's option to delegate his time to Grandparents, and segregated Grandparents' visitation rights from Father's parenting time under the new parenting plan. The magistrate imputed income to Mother in the amount of $2,080 per month. The magistrate stated that he was "unaware" of whether Father was receiving overseas pay, found Father's gross income to be $2,987.10 per month based on his BAH and E-5 pay, and set Father's child support obligation at $299.50 to be paid twice per month. A child support worksheet was attached to the parenting plan.

On March 22, 2021, Mother requested a hearing before the juvenile court judge pursuant to Tennessee Code Annotated section 37-1-107. Following a hearing on April 19, the juvenile court entered an order finding that counsel for the parties had agreed that the matter would be reheard "by way of oral arguments." The court instructed the parties to file briefs and set oral argument to be heard on June 17, 2021. Following the hearing on June 17, the juvenile court judge determined that the matter was timely "appealed" from the magistrate pursuant to Tennessee Code Annotated section 37-1-107(d) and that, in lieu of "retrying the case," the parties agreed to submit the matter on briefs. In its June 21, 2021 order, the court stated:

The Court, having not heard the testimony and evidence presented at the underlying trial, cannot make factual findings without conducting a *de novo* trial of the case and considering the merits of the parties' arguments. The Court advised the parties a Rehearing is not mandatory and a direct appeal to the Tennessee Court of Appeals is a remedy for either party.

The court further stated:

> The Court offered to set this matter for a *de novo* hearing on the merits or, alternatively, for Mother to be allowed to appeal this matter to the Tennessee Court of Appeals. Mother declined to set the case for a *de novo* hearing.

> Therefore, the Court AFFIRMS in full the findings and conclusions of law made by Magistrate Cabell on March 9, 2021 and on March 12, 2021. This is a FINAL ORDER.

Mother filed a timely notice of appeal to this Court. Mother's brief was submitted in March 2022. Neither Father nor Grandparents filed a brief in this Court, and the matter was docketed on briefs on May 2, 2022.

## II. ISSUES

Mother raised the following issues for review, as stated in her brief:

(1) Whether subject matter jurisdiction existed to grant Paternal Grandparents "Parenting Time" without the Williamson County Juvenile Court making any findings of fact or conclusions of law
(2) Whether the Williamson County Juvenile Court erred when ruling that the Paternal Grandparents had established rights pursuant to T.C.A § 36-6-306 and § 36-6-307 when there was no pending petition for Grandparent's Visitation
(3) Whether the juvenile court erred in granting Grandparent's Visitation without addressing the issue of substantial harm
(4) Whether the trial court erred in finding Father was a resident of Japan while Father's permanent residence was in Tennessee.

## III. STANDARD OF REVIEW

This case was tried without a jury. Accordingly, under Rule 13(d) of the Tennessee Rules of Appellate Procedure, our review of the trial court's findings of fact is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012). The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted). The trial court's findings of fact must therefore contain sufficient underlying facts to clearly disclose the basis of the trial court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted). We

review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Rogers v. Louisville Land Co.,*** 367 S.W.3d 196, 204 (Tenn. 2012).

## IV. ANALYSIS

We begin our discussion by observing that Mother, who is represented by counsel, fails to cite to the record in her brief to this Court. Rule 27(a)(6) of the Tennessee Rules of Appellate Procedure provides that the appellant's brief must contain "a statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record[.]" We are under no obligation to search a record to verify statements made in a party's brief, and the failure to cite to the record as required by Rule 27 "constitutes a waiver of the issue." ***Bean v. Bean***, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000). However, under Rule 2 of the Tennessee Rules of Appellate Procedure, we may suspend the briefing requirements at our discretion. We will exercise this discretion on occasion, particularly in cases involving the interests of children. ***Chiozza v. Chiozza***, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009). We accordingly will exercise our discretion under Rule 2 in this case.

Before turning to the issues presented for review by Mother, we observe that the juvenile court initially sought to adjudicate this matter on the parties' briefs and statements of counsel.[13] As noted above, upon determining that the parties' briefs and statements of counsel were not adequate for findings of fact, the juvenile court offered Mother a full evidentiary hearing *de novo* and also instructed her that she could waive a hearing and appeal directly to this Court. Mother declined to set the matter for a full hearing, and the juvenile court then affirmed the findings and conclusions of the magistrate without conducting an evidentiary hearing. This appeal ensued.

Tennessee Code Annotated section 37-1-107 ("section 37-1-107") governs juvenile court magistrates. Section 37-1-107(d) provides, in relevant part:

> (d) Any party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a *de novo* hearing by the judge of the juvenile

---

[13] In her brief to this Court, Mother states:

> On a rehearing of the matter, the [juvenile court judge] opted to hear the case via oral argument upon agreement of both counsel in an effort to minimize costs to the parties, and both parties submitted informal briefs prior to the hearing. At the hearing, [the judge] upheld the prior ruling of [the magistrate] because, in her words, she had not heard any testimony and believed Mother was not under duress when entering into the Permanent Parenting Plan at mediation.

However, the record before us does not include transcripts of the proceedings before the juvenile court, and it does not appear that the juvenile court made any written findings.

court. The judge shall allow a hearing if a request for hearing is filed. No later than ten (10) days after the entry of the magistrate's order, the judge may, on the judge's own initiative, order a hearing of any matter heard before a magistrate. . . .

Section 37-1-107(e) governs direct appeals from the magistrate's judgment to this Court. The section provides:

(e) If no hearing before the judge is requested, or if the right to the hearing is expressly waived by all parties within the specified time period, the magistrate's order becomes the order of the court. A party may appeal the order pursuant to § 37-1-159.

Under section 37-1-107, a magistrate's order becomes the final order of the juvenile court in ten days unless a hearing before the juvenile court judge is requested within the ten-day period provided by section 37-1-107(d).[14]  ***In re Kendall R.***, No. M2020-01226-COA-R3-JV, 2002 WL 609602, at \*3 (Tenn. Ct. App. Mar. 2, 2022).  When the magistrate's order becomes the final order of the juvenile court, appeal to this Court is governed by the Tennessee Rules of Appellate Procedure unless otherwise provided by Tennessee Code Annotated section 37-1-159.  Tenn. Code Ann. § 37-1-159(g).  Under the Tennessee Rules of Appellate Procedure, a notice of appeal must be filed within 30 days of entry of the trial court's judgment.  Tenn. R. App. P. 4(a).  Accordingly, absent proceedings before the juvenile court judge, any direct appeal of the magistrate's order in this case would have been untimely when Mother filed her notice of appeal in this Court on July 19, 2021.

In this case, however, Mother exercised her right under section 37-1-107(d) to request a *de novo* hearing before the juvenile court judge.  A hearing under the section is not an "appeal."   Rather, the section requires "a traditional *de novo* hearing."  ***Kelly v. Evans***, 43 S.W. 3d 514, 515 (Tenn. Ct. App. 2000).  A *de novo* hearing requires "a new trial on both issues of law and fact as if no other trial had occurred."  ***In re Piper H.***, No. W2015-01943-COA-R3-JV, 2016 WL 5819211, at \*6 (Tenn. Ct. App. Oct. 5, 2016).   The juvenile court judge must "decide the issues without deference to the magistrate's actions."  ***Id***.  The *de novo* hearing is not a review of the record or proceedings before the magistrate.

---

[14]Tennessee Code Annotated section 37-1-107 was significantly amended in 2016.  Prior to the 2016 amendments, section 37-1-107(f) provided that, if no hearing before the judge was requested within 5 days of transmission of the magistrate's written findings and recommendations to the court, or when the right to a hearing was waived, the findings and recommendations of the magistrate became the decree of the court when confirmed by an order of the judge.  The current version of the statute provides that the magistrate's order becomes the order of the court if no hearing before the judge is requested within 10 days, or if the right to the hearing is expressly waived by the parties within the specified time period.  Tenn. Code Ann. § 37-1-107(d)-(e).

***Kissick v. Kallaher***, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006). The hearing before the judge requires a full evidentiary trial, including the testimony of witnesses. ***Id***. Further, briefs and unsworn statement of counsel "constitute neither testimony nor trial." ***Id***. (internal quotation marks omitted).

Accordingly, the juvenile court in this case erred in attempting to decide this matter on briefs and oral argument of counsel. When Mother requested a *de novo* hearing under section 37-1-107(d), it was incumbent on the juvenile court judge to conduct an evidentiary trial. Although it appears the juvenile court offered Mother the opportunity to set the matter for a *de novo* hearing after unsuccessfully attempting to decide the matter on the argument of counsel, it also informed her that she could waive a hearing and appeal the magistrate's order to this Court. The juvenile court then affirmed the magistrate's order without a hearing.

Section 37-1-107(e) permits a direct appeal of the magistrate's order to this Court in two instances. First, a direct appeal may be filed in this Court within the time permitted by Rule 4 of the Tennessee Rules of Appellate Procedure "if no hearing before the judge is requested[]" within 10 days of entry of the magistrate's order. Second, a direct appeal to this Court without a *de novo* hearing before the juvenile court judge may be maintained "if the right to the hearing is expressly waived by all parties within the specified time period[.]" The time period specified by section 37-1-107(d) is 10 days.

We consistently have held that when a party requests a *de novo* hearing under Section 107(d) and the juvenile court fails to conduct an evidentiary trial, the judgement of the juvenile court will be vacated and the matter remanded for a *de novo* hearing as contemplated by the statute. ***State ex. Rel. Groesse v. Sumner***, 582 S.W.3d 241, 257 (Tenn. Ct. App. 2019); ***Kelly v. Evans***, 43 S.W.3d 514, 515 (Tenn. Ct. App. 2001). We accordingly vacate the order of the juvenile court and remand this matter for a *de novo* hearing before the juvenile court judge.

We turn next to the procedural posture of this case in the juvenile court. As noted above, although Father sought an order setting child support in his January 2017 petition, it appears the December 2017 parenting plan did not include a child support provision. A valid parenting plan must provide for child support pursuant to the child support guidelines, and any deviation from the guidelines must be stated on the record. ***E.g., State ex rel Flatt v. Flatt***, No. W2007-01376-COA-R3-CV, 2008 WL 794521, at * 5 (Tenn. Ct. App. Mar. 27, 2008). Further, when a trial court modifies an award of parenting time, it must also revisit the parties' child support obligations. ***E.g., In re Gabrielle R.***, No. W2015-00388-COA-R3-JV, 2016 WL 1084220, at *3 (Tenn. Ct. App. Mar. 17, 2016).

In this case, Respondents acknowledged in their June 2021 trial memorandum that the December 2017 mediated agreed parenting plan entered by the juvenile court did not establish Father's child support obligations. Therefore, it appears from the record that the

December 2017 agreed parenting plan was not a valid plan and that the juvenile court's December 2017 order was not a final order. ***See id.*** Accordingly, the court-ordered 2021 permanent parenting plan was not a modified plan, but an initial permanent parenting plan. We further observe that the magistrate stated in its 2021 order that it was "unaware" of whether Father receives overseas pay. Therefore, the magistrate neither established Father's income with certainty nor determined that a deviation from the child support guidelines was warranted. ***See, Wade v. Wade***, 115 S.W.3d 917, 923 (Tenn. Ct. App. 2002) (discussing imputed income from the value of military fringe benefits for purpose of calculating child support). Upon remand, the juvenile court must fashion a valid permanent parenting plan. Because it appears the December 2017 agreed parenting plan was not a final judgment, Grandparents' visitation rights, if any, must be determined in conformance with the statutory requisites if a petition is filed under Tennessee Code Annotated section 36-6-306 or Tennessee Code Annotated section 36-7-101, *et. seq.*, if applicable.

## IV. CONCLUSION

In light of the foregoing, the order of the juvenile court is vacated, and the issues raised by Mother on appeal are pretermitted. This matter is remanded to the juvenile court for further proceedings consistent with this Opinion. In the meantime, we urge the parties to work together to further the best interests of the child who is at the center of these contentious proceedings. Costs on appeal are taxed one-half to Appellees, Isaiah M. Jakes, Naomi Jakes, and Gary Jakes, and one-half to Appellant, Maycee J. Stine, for all of which execution may issue if necessary.

s/ Kenny Armstrong

KENNY ARMSTRONG, JUDGE
